# Appeal of Grim et al.

1. The executor of a deceased partner has a right only to compel an account and payment to him of his testator's interest in the firm. He has no right to compel the continuance of the business.

2. An executor of a deceased partner may, in order to avoid a forced sale of the stock of the firm on hand, settle with the surviving partners on such terms as in the exercise of good faith and a reasonable discretion he may choose to accept.

3. The purchase of the interest of a deceased partner by his executor on his own behalf is viewed with much suspicion by the court, and if

tainted with fraud is absolutely void. Even if there is no fraud an indefeasible title is not acquired, but where the purchase is bona fide and for a fair price, and the parties interested know of and approve the transaction, and, after a full consideration of all the circumstances and deliberate examination, subsequently formally ratify the purchase, the same will be sustained.

4. The principle above laid down applies even where it appears that another party offered a greater sum for the interest of deceased than was paid by the executor, where the parties interested have known of this fact at the time of their deliberate ratification of the purchase.

5. A married woman should be held to the observance of that good faith in her dealings with the world to which others are bound. Hence, although contracts void under the disability of coverture cannot be validated by estoppel, in matters as to which she is affected with no disability she will be held to the exercise of the same degree of good faith as others in like case.

6. The above principle applied in the present case where certain married women executed, without the joinder of their husbands, an instrument which virtually ratified a purchase by their father's executor of decedent's interest in a partnership. In such case the married women were held estopped from subsequently objecting to said purchase.

7. A testator by his will directed that the amounts due him by his sons-in-law should be taken as advancements by him to their several wives:
*Held*, that no interest could be charged on the indebtedness of the sons-in-law to the testator.

8. Where a testator, after providing for certain annuities, leaves the residue of his estate to his widow during her life, she is entitled to interest which has accrued upon a debt due the estate between the date of testator's death and the date of the collection of the debt.

February 19, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Lehigh county :* Of January Term, 1883, No. 303.

Appeal of A. S. Grim and Bella D., his wife, S. A. Feldman and Anna M., his wife, and Bartley Murtaugh and Rachel P., his wife, from a decree of the said court, upon the first account of Joseph Schnurman, executor of Henry Schnurman, deceased.

From the report of the auditor appointed to audit the said account (C. M. Runk, Esq.), which was filed March 12, 1880, the following facts appeared: Henry Schnurman died in March, 1875, seised and possessed of considerable real and personal property. Joseph Schnurman, his son-in-law, one of the executors named by Schnurman in his will, alone accepted the appointment, and letters testamentary were granted to him. The testator left to survive him a widow, Clementina Schnurman, four daughters—namely, Araminda B. Schnurman, wife of the accountant, Rachel P. Murtaugh, wife of B.

Murtaugh, Anna M. Feldman, wife of S. A. Feldman, Bella D. Grim, wife of A. S. Grim,—a son, Henry Schnurman, Jr., and a grandson, Robert Seider, son of testator's daughter Rachel by a former marriage.   Before his death testator had been a member of the firm of H. & J. Schnurman, millers, consisting of himself and Joshua Schnurman, a brother of the accountant.   This firm was dissolved long before testator's death, and was succeeded by that of H. Schnurman & Co., composed of the members of the old firm and Joseph Schnurman, the accountant.   This firm also was dissolved before testator's death.   Both firms were indebted to testator's estate.   Joshua Schnurman was the liquidating partner of both.   From the claims against these two firms, which aggregated $17,046.61, the accountant realized, in 1878, the sum of $16,030.70.   Of this he computed that $1,700 was interest accrued since the testator's death, and therefore paid it to the widow, Mrs. Clementina Schnurman, the beneficiary of the income of his estate (otherwise undisposed of) during her life.   Objections were made to this credit, on the ground that the entire payment was on account of principal, but it was allowed by the auditor.

At the time of testator's death he was a member of the firm of Schnurman, Newhard & Co., which was carrying on an extensive clothing business in Allentown, and in which testator and Charles S. Newhard each had a three-eighths interest, and Henry R. Roth the remaining two-eighths.   Shortly after testator's death the stock of this firm was appraised and valued at $16,394.30, and the three-eighths owned by the estate was finally appraised at $6,147.86¼.   This interest the accountant himself took at the valuation, paying for it by a mortgage on real estate belonging to him for $6,147.86¼, which he gave to C. W. Cooper in trust for testator's estate.   Testator's son-in-law, A. S. Grim, offered to give $2,000 more for this interest, which offer was refused by accountant.   Some time after this, application was made to the court for the revocation of accountant's official bonds, by his sureties, who alleged misapprehension on their part of the effect of the obligation, and fraud in procuring their signatures.   In his answer to this petition accountant admitted that he had purchased decedent's interest in the firm as above, but claimed that it was for the best interests of the estate, and was done with the full knowledge and approval of the heirs of decedent; and this answer was accompanied by a petition of the heirs affirming the truth of the answer, and signed by the widow, the son, and the four daughters of the decedent.   In his account accountant charged himself with the appraised value of decedent's interest in the firm, and claimed credit for

a' like amount, represented by the mortgage given by him to C. W. Cooper in payment for the same.    Objection was made, but not sustained by the auditor, who held that if the heirs or legatees disapproved of the purchase of the interest by the executor, they should have endeavored to set it aside; and also that they were estopped by the above petition.

The testator directed that the sums due him by his sons-in-law should be treated as advancements to his daughters.    The auditor reported that "the indebtedness of Joseph Schnurman, the accountant, is to be treated as an advancement, hence no interest can be charged on it as such, and the real sum to be deducted from the wife's legacy would be $3,678.99, and she would be entitled to the difference between that sum and the $4,000.    The accountant testifies that he took her receipt for $4,000, without the payment of any money to her. If she is satisfied with that no one can complain."

The following exceptions, inter alia, were filed to the auditor's report, on behalf of Henry Schnurman and the above-named appellants:

1. The auditor erred in allowing the accountant credit for $1,700, paid to the testator's widow out of the amount realized by the executor, from the firm of H. & J. Schnurman, and H. Schnurman & Co.

6. The auditor erred in allowing credit for $6,147.85, being the mortgage held by Charles W. Cooper, in trust.

7. The auditor erred in including the appraised value of the testator's interest, in the firm of Schnurman, Newhard & Co., to wit, $6,147.85, in the debit side of the account.

8. The auditor erred in holding that the private sale of said interest by the executor to himself is valid.

10. The auditor erred in not holding and reporting said sale to be invalid, and in not surcharging the accountant with the profits made in the business, as requested by the exceptants.

11. The auditor erred in not surcharging the accountant with $2,000, being a bona fide offer made by A. S. Grim, for the interest of the estate in the firm of Schnurman, Newhard & Co., on and beyond the appraisement.

12. The auditor erred in finding and reporting that the acceptance of the first interest by the executor at the appraisement, was ratified and confirmed by acquiescence.

16. The auditor erred in holding that the notes held by the estate against Joshua Schnurman, the executor, are to be treated as advancements.

The court (ALBRIGHT, P. J.), after argument, dismissed the above exceptions, and entered a decree confirming the auditor's report.    The above-named appellants thereupon took

this appeal, assigning for error the dismissal of said exceptions, and the said decree.

*Edward Harvey* (*Thomas B. Metzger* with him), for appellants.—An executor or administrator cannot directly or indirectly purchase at his own sale, whether made under a power in a will, or by an order or decree of court, or under an execution. If he purchase he shall be considered a trustee for the parties interested in the estate, and shall account for the utmost extent of advantage made by him of the subject so purchased. Sugden on Vend. and Pur. (8 Am. ed.), 688; 2 Williams on Executors, 1005; Rogers *v.* Rogers, 1 Hopk., 525; Davoue *v.* Fanning, 2 Johns. Ch., 252; Beeson *v.* Beeson, 9 Barr, 288; Lazarus *v.* Bryson, 3 Binney, 60; Campbell *v.* Penn Life Ins. Co., 2 Wharton, 53; Webb *v.* Dietrich, 7 W. & S., 401; Painter *v.* Henderson, 7 Barr, 50; Chorpenning's Appeal, 8 Casey, 315; Dundas' Appeal, 14 Smith, 325. It makes no difference what the property is. The rule applies where the purchase is of a share in a copartnership: Cook *v.* Collingridge, Jacob, 621.

The appellants are femes covert, and cannot ratify a breach of trust by acquiescence. 1 Perry on Trusts, § 467; 2 Perry on Trusts, § 849; Bigelow on Estoppel, 510; Kelly on Contracts of Married Women, 122; Wharton on Contracts, § 89; Bond *v.* Bunting, 28 Smith, 215; Dampf's Appeal, 1 Outer., 371; Walker *v.* Symonds, 3 Swans., 69; Hopkins *v.* Myall, 2 R. & M., 86; Ryder *v.* Bickerton, 3 Swans., 80; March *v.* Russell, 3 M. & Cr., 31; Nail *v.* Punter, 5 Sim., 556; Kellaway *v.* Johnson, 5 Beav., 319; Bateman *v.* Davis, 3 Madd., 98; Cocker *v.* Quayle, 1 R. & M., 535; Lord Montford *v.* Lord Cadogan, 19 Ves., 639; Barton's Estate, 1 Parsons, 27; Keen *v.* Coleman, 3 Wright, 302; Klein *v.* Caldwell, 10 Norris, 140; Keen *v.* Hartman, 12 Wright, 500; Glidden *v.* Strupler, 2 Smith, 400; Rumfelt *v.* Clemens, 10 Wright, 455; Innis *v.* Templeton, 14 Norris, 262.

The children of the testator had no *jus disponendi* over the corpus of the estate. Estoppel applies *only* to rights existing in the party at the time of the acquiescence. Bigelow on Estoppel, 471; 1 Perry on Trusts, § 467; Bennett *v.* Colley, 5 Sim., 181; Browne *v.* Cross, 14 Beav., 105; Dillett *v.* Kemble, 10 C. E. Green, 69; Parkes *v.* White, 11 Vesey, 219. The paper claimed to estop us was made for another purpose, was without consideration, and in no way induced a line of conduct different from what would have been pursued if it had not been signed. Hence there is no estoppel. Bigelow on Estoppel, 508; Campbell *v.* McLain, 1 Smith, 200; Hoffman Steam Coal Co. *v.* Cumberland C. and I. Co., 16 Md., 456.

In no case can delay or silence estop those who are incapable of making contracts. At any rate this proceeding is within the legal period of six years within which the title to personal property must be asserted. Bergen *v.* Bennett, 1 Caines' Cas., 1; Hawley *v.* Cramer, 4 Cowen, 719; Robinson *v.* Hook, 4 Mason, 151; Baker *v.* Whiting, 3 Sumner, 486; Boone *v.* Chiles, 10 Peters, 223; Ashhurst's Appeal, 10 Smith, 290.

If the sale to himself was fraudulent we are entitled to have him surcharged with the profits of the business. Cooke *v.* Collingridge, supra; Robinett's Appeal, 12 Casey, 191; McDonald *v.* Richardson, 5 Jur. N. S., 9; Rosenberger's Appeal, 2 Casey, 67; Norris' Appeal, 21 Smith, 106; Drysdale's Appeal, 2 Harris, 531; McKnight *v.* Walsh, 24 N. J. Eq., 498. These profits belong to the estate—not to the widow or annuitant. Foster *v.* Smith, 2 Y. & C., 193; Darbon *v.* Rickards, 14 L. J. N. S. Eq., 344; Earp's Appeal, 4 Casey, 368; Wiltbank's Appeal, 14 Smith, 256; Moss' Appeal, 2 Norris, 264; Vinton's Appeal, 3 Out., 434; Eastwick's Estate, 39 Leg. Int., 265. If the sale was valid, the executor should be surcharged with $2,000, being the amount offered by A. S. Grim over and beyond the appraisement.

The amount received from the firms of H. & J. Schnurman and H. Schnurman & Co., was $1,015.91 less than the appraised debt. Hence the whole sum must have been *principal* —no justification can be found for treating a part of it ($1,700) as *interest*.

An advancement can only be made by a parent to a child or grandchild. The debt due by the accountant cannot be so treated. High's Appeal, 9 Harris, 283; Hengst's Estate, 6 Watts, 87; Yundt's Appeal, 1 Harris, 575; Miller's Appeal, 7 Casey, 337; Watson *v.* Watson, 6 Watts, 254.

*R. E. Wright, Jr.* (*R. E. Wright* with him), for appellee.— The rules applicable to ordinary real and personal property do not apply to an interest in a firm, which is not a title to the goods, but a mere chose in action. Collyer on Partnership, 6th ed., 151 n., 950; Gratz *v.* Bayard, 11 S. & R., 41; Smith's Estate, 33 Leg. Int., 149; Hanna *v.* Wray, 27 Smith, 27; Lloyd *v.* Thomas, 29 Smith, 68; Tillotson *v.* Tillotson, 34 Conn., 335; Horton's Appeal, 1 Harris, 67; Lucas *v.* Laws, 3 Casey, 211; Trotter *v.* Shippen, 2 Barr, 358; Pearce *v.* Chamberlain, 2 Ves. Sr., 33; Hutchinson *v.* Smith, 7 Paige Ch., 35; 2 Lindley on Part., 867–895.

The appellants are estopped from attempting to surcharge the executor by acquiescence and positive encouragement and approval. Ashhurst's Appeal, 10 Smith, 290; Beeson *v.* Bee-

son, 9 Barr, 286; Share *v.* Anderson, 7 S. & R., 63; Brown *v.* Caldwell, 10 S. & R., 114; Stroble *v.* Smith, 8 Watts, 280; Adlum *v.* Yard, 1 Rawle, 171; Painter *v.* Henderson, 7 Barr, 48; Wilson *v.* Bigger, 7 W. & S., 111. Estoppel will operate against a married woman in those matters as to which she is not incapacitated. Wharton on Contracts, § 89; Bispham's Equity, 2d ed., § 293; Keen *v.* Hartman, 12 Wright, 497; Keen *v.* Coleman, 3 Wright, 299; Innis *v.* Templeton, 14 Norris, 267; Knight *v.* Thayer, 125 Mass., 25. As to the matter here there was capacity to contract. Act of April 11, 1856, § 4; Purdon, 1009.

Increase in the value of the thing itself, profits accrued before the devise, are a part of the corpus, but all accruing profits and additions are earnings or income. Hence, if any one is entitled to claim it is the widow and not the appellants. Moss's Appeal, 2 Norris, 264; Wiltbank's Appeal, 14 Smith, 256; Earp's Appeal, 4 Casey, 368.

The executor did not accept Grim's offer, but he increased the rental of the store (which belonged to the estate) from $1,500 to $2,000 per annum, which was more profitable to the estate. The settlement with the representatives of the firms of H. & J. Schnurman and H. Schnurman & Co. was made several years after testator's death. The claim was disputed, and finally a compromise (which the auditor found was fair, proper, and for the best interests of the estate) was made for a round sum of about $16,000. The estate would have been entitled to interest on its claim, hence it was proper to regard a part of this sum as interest.

The testator directed that the debts of his sons-in-law should be treated as advancements. That of accountant was deducted from his wife's share. It, therefore, did not, as appellants claim it should, bear interest. Miller's Appeal, 7 Casey, 337; Green *v.* Howell, 6 W. & S., 203.

Mr. Justice CLARK delivered the opinion of the court, October 6, 1884.

At the decease of Henry Schnurman, the partnership stock of Schnurman, Newhard & Co. was valued and appraised at the sum of $16,394.30. No fraud is alleged, nor is it asserted that the sum named does not fairly represent its full value. Neither the executor nor the heirs had any right to take the decedent's place in the partnership, nor to compel the continuance of the business. The stock on hand was rightfully in the possession of the surviving partners, the legal ownership of that stock, for the purposes of liquidation, was in them, and they had the right, acting honestly and with reasonable discretion and diligence, to dispose of it as they pleased.

It was their duty to turn it into available and distributable form, pay the debts, and divide the surplus. The executor possessed no power of sale or other authority over it; he had the right merely to compel an account, and payment accordingly. The decedent's estate was entitled to receive from the surviving partners, upon a general statement of the partnership accounts, after payment of the firm debts and settlement of its affairs, three-eighths of the surplus remaining. The settlement involved a conversion of the common stock into money, and it was in the proceeds of the conversion the executor had a right to participate.

The forced conversion of a large stock of merchandise into money is often attended with the most ruinous consequences, and the mode in which it is to be effected, in any given case, is often of the utmost importance. The administrator or executor of a deceased partner, having in view the best interests of the estate, may settle with the surviving partners on such terms as in the exercise of good faith and a reasonable discretion he may choose to accept; but as the surviving partners are in some sense trustees of the deceased partner's interest, both they and the executor must be held to the exercise of the utmost good faith. The surviving partner may, however, in the interests of trade, purchase from the executor, at a fair valuation, the unascertained share of the deceased partner, and avoid the ruinous results of a general sale. This form of settlement is not infrequent, and, if the parties act bona fide, and with proper discretion, it sometimes affords an easy solution to the difficulties which may arise in such cases. In such a case the affairs of the estate are guarded by the executor, whose interest it is to realize as largely as he can, and who has no interest otherwise.

The purchase of the undivided interest of a deceased partner by the executor of his estate in his own behalf, is viewed with more suspicion. In such case the estate stands altogether unprotected. It is exposed to the greed of the executor, with none to guard against it. The executor appears both as seller and buyer, and an indefeasible title cannot thus be acquired: Chronister *v.* Bushey, 7 W. & S., 153; Campbell *v.* McLain, 51 Pa. St., 200. The rule extends to all having a fiduciary relation to the property, and the fairness and honesty of the transaction do not vary it. This principle is not founded on the assumption of actual fraud; it is a rule of public policy: Drysdale's Appeal, 2 Harris, 536; Chorpenning's Appeal, 32 Pa. St., 315. Where the transaction is accompanied by actual fraud it is absolutely void, and is incapable of subsequent ratification; but a purchase by a trustee at his own sale, bona fide, and for a full price, is but a

legal fraud; it is voidable only, and may be confirmed by the parties in interest, upon full knowledge of all the circumstances, after a deliberate examination. What may be subsequently ratified may, of course, be previously authorized, and an act done by such previous authority needs no subsequent ratification.

The purchase of the interest of Henry Schnurman, deceased, in the firm of Schnurman, Newhard & Co., by the executor of his estate, under the facts of this case cannot be considered an actual fraud; no circumstances of fraud or unfair dealing upon his part are shown. At the most it was but a fraud in law, and if his purchase was made at the solicitation, or by the inducement of the heirs for a fair price, and in good faith, it was not fraudulent in law.

After Henry Schnurman's death the executor caused this joint stock of clothing to be appraised. It was valued at $16,394.30. This valuation is conceded to be full and fair; it was made by disinterested parties, practical tailors of large experience, and Mr. Newhard voluntarily disposed of his interest at the same price. There is no allegation, and there is certainly no proof, that the sum specified does not fairly represent the value of the stock. It was at the valuation thus fixed that Joseph Schnurman, the executor, accepted the interest of his testator, and assumed the responsibilities of a partner.

It is alleged that, before the appraisement was made, Mr. A. S. Grim, a son-in-law of the testator, offered to pay to the executor, for the decedent's interest in the firm, $2,000 more than the appraisement would be found to amount to, but the executor declined the offer, and took the interest himself at the valuation. Whatever may have been the cause of the executor's refusal, if he did refuse this offer, it appears that his action in the premises met the full approval of the heirs. This fact appears from matters subsequently occurring to which we may now refer.

Some time after letters testamentary had been granted to Joseph Schnurman, as executor of the last will and testament of Henry Schnurman, deceased, an application was made by his sureties for revocation of the approval of his official bond, on the grounds of an alleged misapprehension, on their part, as to the effect of the obligation, and fraud in procuring their respective signatures; to this application, on the 14th December, 1875, the executor filed an answer, setting forth, inter alia, as follows:

" That true it is, that without public sale, your respondent has taken and purchased the interest of the said Henry Schnurman, deceased, in the stock of goods lately belonging

to the late firm of Schnurman, Newhard & Co., but this respondent says that his action was for the best interests of the estate.

" That a full, fair and complete appraisement was made of the stock of the said firm, and, that on the basis of the said appraisement, Charles L. Newhard, one of said firm, sold out his interest or proportion in said stock, to his partner, Henry C. Roth, and a Mr. Lewis Sourwine, and that your respondent took the interest or proportion of the said decedent, at the same rate.

" That this was done with the full knowledge and approval of the heirs of the deceased, and was deemed to be for the interests of the estate, as it avoided the necessity of winding up the affairs of the firm by the discontinuance of the business."

The answer was accompanied by a petition from the heirs, objecting to the proceedings by the sureties, and sustaining the executor; the petition contained the following clause :

" We, the undersigned, being all the heirs and legatees of Henry Schnurman, deceased, except two special legatees who live in Europe, do hereby answer that *we have carefully read the above answer, and are satisfied with the truth of its allegations.* That we believe that the said Joseph Schnurman is faithfully administering the trust committed to him. That we believe a full and fair price was paid by the said Joseph Schnurman, for the share of Henry Schnurman, deceased, in the stock of the firm of Schnurman, Newhard & Co. *That we approve of his action in the premises,* and know that the security given for the said purchase money is ample."

From these admissions of the heirs, made to the court, under circumstances which required them to speak the truth, we learn that the purchase of the executor was made in good faith, consulting the best interests of the estate, for a full price, well secured, and with the full knowledge and approval of the heirs and legatees. There is absolutely no evidence in contradiction of these facts, excepting the alleged fact of Grim's offer in May preceding, a fact which, if it existed at all, was doubtless well known at the time. It will be observed, however, that the real estate, in which the business of the firm was conducted, was the property of Henry Schnurman, and it was to the interest of the estate that the business should be continued, that the realty might remain profitable to rent; the surviving partners, if they contemplated a continuance of the business, had a right to select their own partner; no one could intrude himself upon them. Joseph Schnurman was acceptable to them, and here doubtless is the

key to their conduct.   The rent was increased from $1,000 to $1,500, and the business was continued.

If the heirs had been sui juris, they would, under these circumstances, certainly be precluded now, from asserting a right inconsistent with the course which by their encouragement they induced the executor to pursue.   It is objected, however, that certain of the heirs are married women, and as it does not appear that they were joined by their husbands in these acts of approval and encouragement, they are protected by their coverture.

It is certainly true, as shown in a long line of cases, that a contract, void under the disability of coverture, cannot be made good by estoppel; neither a fraudulent denial of coverture, payment of purchase money, nor silent acquiescence in the making of improvements, nor all of these together, can, by way of estoppel, give validity to a contract void upon this ground.   Glidden v. Strupler, 2 P. F. Smith, 400; Bispham Eq., 293.   But the transaction here shown, so far as the heirs are concerned, was in no sense a sale of their interests in anything; the active parties to the sale were the surviving partners on the one side, and Joseph Schnurman on the other; the heirs were but passively affected by it.   There was no conveyance, no transfer, no release of their interests in the partnership or the estate; their act was merely the approval of a course of procedure, to be pursued by the executor, to ascertain their shares and advance the settlement.   In this they were affected with no disability; under the Act of 1855 they were entitled, without being joined with their husbands, to ascertain, receive and receipt for their shares.   This was a matter therefore about which they might be consulted, and concerning which they might advise, and, in so doing, they were held to the exercise of the same degree of good faith as others in a like case.   It was through the inducement of the heirs that the executor assumed the hazard of the purchase, and became responsible for the price; the law presumes that the act was done on the faith that it should not afterwards be disputed, or the resulting obligations denied.   A married woman should be held to the observance of that good faith, in her dealings with the world, to which others are bound; her protection is for the prevention of fraud; she should not thereby be enabled with impunity to defraud others.   The subject of the sale has, in the nine years that have elapsed, passed out of the executor's power, his condition is materially changed, and the heirs are by their conduct precluded from asserting a right which otherwise they might have enforced. It is said that the daughters are not the owners of the corpus of the estate; this may be so, but they are the only exceptants,

9 OUTERBRIDGE.—25.

and are the parties to this appeal. The 8th assignment is, we think, without merit. The testator directed that the notes of his sons-in-law should be taken and considered as advancements ; the usual incidents to an advancement thereby attached to the notes. The wife of the accountant receipted to the executor upon the footing of the will ; if she made no complaint, no one else could. The 9th assignment is equally without merit. The $1,700 paid to the widow was an adjustment of interest accruing to her from the testator's death, upon the moneys remaining in the hands of Joshua Schnurman, during the protracted examination of the books, made at the instance of the heirs. The settlement was for a round sum including interest ; but the widow was entitled to the interest, and this $1,700 is the sum which was paid to her as interest out of the round sum received. No complaint is made that it was not actually paid, or that the amount is too large ; indeed it appears to have been paid with the appellant's consent to the widow, who at once divided the amount among her children ; each of the appellants received a share, and they now seek to surcharge the executor with the money which they now have in their own pockets.

The decree is affirmed, and the appeal dismissed at the cost of the appellants.