# Mamaux's Estate.

*Decedents' estates—Partnership—Dissolution—Death—Orphans' court—Jurisdiction—Executors and administrators—Widow's election—Agreement as to continuance of partnership business—Compensation of partner—Executors—Account—Surcharge.*

1. The orphans' court has no jurisdiction over a going partnership in which a decedent has an interest.

2. The death of a partner causes a dissolution of the partnership by operation of law, but the surviving partners may agree with the executors of the deceased partner to continue the business for a term of years, directed by the deceased in his will, and such an agreement will be valid although the interest in the estate in the profits for the term will be less than the proportion which the deceased would have received, if he had been alive.

3. In such case, as the survivors were under no obligation to continue the business, it was for them to say upon what terms, if at all,

they would do so, even though such terms conflicted with the deceased's will.

4. As the executors could not compel a continuance of the business upon any terms, they cannot be chargeable for failure to secure its continuance upon more favorable terms; and especially is this so where a very large profit accrued to the estate at the end of the term.

5. In such case it is immaterial that the interest in the decedent's share of the principal was valued as of the time of his death, and paid over to the widow to which the estate belonged, shortly after decedent's death. Such payment did not affect the agreement of the surviving partners to continue the business for a further term.

6. Where one of the surviving partners, was also executor of the deceased partner, he was not entitled to extra compensation over his commissions, share of profits, and salary from the business, for services rendered to the estate.

7. A partner is not entitled to extra compensation merely because of the arduous character of his services; and especially not from the estate of a deceased partner.

Argued April 25, 1922. Appeal, No. 147, Oct. T., 1921, by E. A. Mamaux and F. A. Kimball, Executors, from decree of O. C. Allegheny Co. Sept. T., 1920, No. 584, dismissing exceptions to adjudication, in estate of Albert L. Mamaux, deceased. Before MOSCHZISKER, C. J., WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Decree modified.

Exceptions to adjudication. Before MILLER, P. J.
The opinion of the Supreme Court states the facts.
Exceptions dismissed. The executors appealed.

*Error asigned,* inter alia, was decree, quoting record.

*M. W. Acheson, Jr.,* of *Sterrett & Acheson,* and *Charles Alvin Jones,* with them, *H. M. Irons,* and *Miller & Nesbitt,* for appellants.—The court's undertaking, five years after the event, to charge the widow's paramount claim upon the corpus of her husband's estate, which claim vested at his death, to after-death earnings produced by the estate's one-quarter residue of capital interest in

the partnership assets so as to bring the estate's capital interest back to a one-third, is unwarranted, inequitable, and unjust.

The agreement that the executors actually made with the surviving partners was the only agreement for the continuance of the estate in the businesses which the situation admitted of, was made in good faith, and was highly profitable to the appellees, and their acceptance of the fruits thereof is a ratification: Shipe's App., 114 Pa. 205; Little v. Hazlett, 197 Pa. 591; Wilcox v. Derickson, 168 Pa. 331; Allen's App., 125 Pa. 544.

This being a controversy between executors and legatees and the executors having acted in good faith, they are not liable beyond what they actually received, there being no negligence.

In addition to being an executor and a surviving partner, there were cast upon E. A. Mamaux by the fourth paragraph of the will additional duties and responsibilities in the management and control of the estate's remaining interest in the business in respect of which he was entitled to special compensation: Zell's App., 126 Pa. 329; McCullough v. Barr, 145 Pa. 459; Eisenlohr's Est., 258 Pa. 431.

*J. B. Eichenauer,* of *Rose & Eichenauer,* with him *Walter K. Sharpe, Marion H. Murphy* and *Robert A. Applegate,* for appellees.—Even assuming for the purpose of argument that there was an actual and proper withdrawal and reduction of capital, there was a duty to replace it when sufficient profits were available for the purpose: Grim's App., 105 Pa. 375.

As to whether or not a partnership is dissolved by the death of a partner the law is clear that, although such a result follows in the ordinary case, dissolution may be prevented either by an agreement in the articles of partnership or by a direction in the deceased partner's will. It is universally held that dissolution does not occur by reason of death if provided against in the partnership

articles: Gratz v. Bayard, 11 S. & R. 41; Laughlin, Trustee, v. Lorenz's Admr., 48 Pa. 275; Leaf's App., 105 Pa. 505; Evans v. Watts, 192 Pa. 112; Brew v. Hastings, 196 Pa. 222.

It is likewise held that dissolution by death may be prevented by a provision in a deceased partner's will if assented to by the surviving partners: Wilcox v. Derickson, 168 Pa. 331; Eisenlohr's Est., 258 Pa. 431; Gilbert's App., 78 Pa. 266; Chorpenning's App., 32 Pa. 315.

That a surviving partner is not entitled to compensation for his services rendered in partnership affairs is well settled: Eisenlohr's Est. (No. 1), 258 Pa. 431.

OPINION BY MR. JUSTICE WALLING, June 24, 1922:

Albert L. Mamaux, of Pittsburgh, died May 9, 1915, a member of two mercantile partnerships, hereinafter named; the other partners in each were his brother, Eugene Mamaux, and his (deceased's) son, John Mamaux. The three were equal partners in both firms. Clause four of the last will of Albert L. Mamaux is: "In regard to my one-third interest in the partnership business of the Pittsburgh Waterproof Company, it is my will and I direct, at the election of my partners, that they carry on and conduct said business for a period of five years after my decease; my brother E. Mamaux, to have the full management and control of said business during said period. In regard to my one-third interest in the partnership business of the A. Mamaux & Sons firm, it is my will and I direct, at the election of my partners, that they carry on and conduct said business for a period of five years after my decease." The next clause gave the surviving partners an option to buy testator's interest in the partnerships on the expiration of the five years, at the invoice price. His widow, to whom he gave only what the law obliged him to give, took against the will. His brother and Frank Kimball were named as executors and directed to make no distribution, except to specific legatees, until five years after his

death, at which time distribution was ordered of his residuary estate. There was no ill feeling between the widow and the surviving partners; while the latter kept the firms going during the early summer of 1915, they refused to go on with the business ( both firms being practically one) until her interest was eliminated, and she was anxious to get possession of her one-third of the deceased's personal estate, of which his one-third interest in the partnerships was the major part. So, on or about August 2, 1915, a meeting was had between the executors and the surviving partners, at which the latter refused to continue the business with the estate as an equal partner, but it was finally agreed that one-third of the estate's interest in the business, representing the widow's share, should be withdrawn and then the surviving partners would continue the business for the five years, to be computed from Albert's death (May 9, 1915), on the basis of three-eighths thereof each to Eugene and John and the remaining two-eighths to the estate of Albert; and the firm's books were kept accordingly until the end of the five years. During the same year (1915) the executors made a satisfactory settlement with the widow; pursuant to which and at her request the one-third interest in the business, being one-ninth of the entire capital and amounting to $4,407.06, was withdrawn from the firms December 17, 1915, and placed in bank to remain at interest for her benefit until the debts of the estate were paid and certain litigation ended; when, in May, 1917, $4,795.17 was paid her by the executors in full of her share of the personal estate. Meantime the executors had filed a partial account to which the present appellee excepted, as it failed to account for the estate's interest in the firms' business. However, the exceptions were dismissed, as an orphans' court has no jurisdiction over going partnerships: see Mamaux's Est., 260 Pa. 514.

At the expiration of the five years, the executors filed a second account showing that the estate's one-fourth

interest in the firms had increased in value, including profits, from $8,821.25 to about $111,000. To this account the appellee, as a residuary legatee, excepted on the ground that the estate was entitled to one-third instead of one-fourth interest in the partnerships in question. The orphans' court sustained this contention and surcharged the executors with the difference amounting to $34,203.60; from which they brought this appeal.

By their terms the copartnerships might be dissolved, inter alia, "by mutual consent or by operation of law"; hence, Albert's death would, prima facie, cause a dissolution by operation of law (Little v. Hazlett, 197 Pa. 591), yet the partners might agree otherwise, and testator's will left it optional for his partners to continue his one-third interest in the business for five years, but they decided not to do so. Here the auditing judge inadvertently fell into error by assuming that the surviving partners elected to continue the business as provided in the will, although he expressly finds they refused to do so unless their interests were increased to three-eighths each, and also finds that, "In August, 1915, as of May, the time of decedent's death, the surviving partners and executors changed the interest as of the date of his death from one-third to two-eighths, and thereby increased the interest of the surviving partners each to three-eighths"; it is thus manifest the partnerships were not continued on a one-third basis. As the survivors were under no obligation to continue the partnerships (Appeal of Grim et al., 105 Pa. 375) it was for them to say upon what terms, if at all, they would do so, and this they did in the agreement of August, 1915. But it is urged that agreement was made without the knowledge or consent of the beneficiaries and participated in by Eugene Mamaux in the dual capacity of a surviving partner and an executor. Even conceding these circumstances rendered the agreement voidable, it was not void and did not impose upon the surviving partners obligations they expressly refused to assume. As it was not within the power of the

executors to compel a continuance of the business, upon any terms, how can they be chargeable for failure to secure its continuance upon more favorable terms. The only contract for a continuance of the partnerships was that of August, 1915, and thereunder the residuary legatees have profited over $100,000; had the business resulted in a loss, the power of the executors to arrange for its continuance upon a basis different from that stated in the will might be material. In view of the express agreement of August, 1915, there is no room for an inference that the continuance of the business by the surviving partners was an implied election to do so with the estate's one-third interest remaining therein, as specified in the will. While the agreement may possibly have been irregular it turned out most fortunate for the residuary legatees and affords them no ground for complaint. There is here no allegation of fraud and the widow has never complained of the settlement made with her.

The auditing judge finds as a fact that the widow could have been paid her one-third without withdrawing it from the capital of the business; that is supported by the evidence, if the profits of the partnerships earned after the death of her husband are included, but not otherwise, and no such profits had been ascertained or were available when the capital was withdrawn in December, 1915. At all events it was withdrawn for that purpose and thus any interest she might otherwise have had in the business was eliminated, according to the prior understanding; otherwise the partnerships would not have been continued and the estate would have lost the profits. True, the widow was not entitled to receive her share out of any particular fund (Gallagher's Est., 76 Pa. 296), but inasmuch as the reduction of the estate's interest in the business, to one-fourth, was a condition necessary to a continuance of the partnerships, such withdrawal of capital resulted in no loss to the estate, and while it increased the relative interest of the sur-

viving partners, it did not increase their actual investment in the business.

Eugene Mamaux took active charge and control of the business and managed it successfully during the five years, and accountants claim a credit of $5,546.86 as paid him for services to the estate. This the orphans' court properly disallowed. Such services were rendered to the business and not to any particular interest therein, and from the business Eugene received a salary; the executors, of whom he was one, also received a commission for their services to the estate. There are no such special circumstances here as to justify a departure from the general rule that a partner is not entitled to extra compensation merely because of the arduous character of his services (Zell's App., 126 Pa. 329; Consaul v. Cummings, 222 U. S. 262; Ruggles v. Buckley, 175 Fed. 57), especially not from the estate of a deceased partner (Appeal of Miller & Spang, 18 W. N. C. (Pa.) 485); this is not changed by the fact that the will purports to give Eugene the management and control of the entire business.

The decree is modified by striking therefrom the surcharge of $34,203.60, as the difference between the profits of one-third and one-fourth of the business, and also by striking therefrom the credit of $1,710.18 allowed as commissions on such surcharge; the assignments of error raising other questions are overruled and the record is remitted to the orphans' court that distribution may be made in accordance herewith, the costs to be paid out of the fund for distribution.