## Rosenthal's Estate

Before Van Dusen, P. J., Stearne, Sinkler, Klein, and Ladner, JJ.

*John J. Mitchell, Jr.,* and *Leslie M. Swope* of *Drinker, Biddle & Reath,* for exceptants.

*Harold C. Cohen,* contra.

STEARNE, J., May 2, 1941.—The exceptions raise two principal questions: Whether the auditing judge erred (1) in decreeing a forfeiture of the commissions of one of three co-executors and trustees, and (2) in declining to construe the terms of a trust erected in a codicil, and relegating that determination until the trustees filed their account.

The auditing judge, under undisputed facts, declined to allow Frank D. Behring, co-fiduciary, any compensation for services to the estate.

The allowance of a fiduciary's commissions, as well as counsel fees, is primarily within the discretion of the auditing judge, and his action ordinarily will not be disturbed except for clear error: McGraw's Estate, 269 Pa. 403; Huff's Estate, 300 Pa. 64; Harton's Estate, 331 Pa. 507; Redmond's Estate, 21 D. & C. 497; Hollins' Estate, 29 D. & C. 307. However, the court en banc may review allowance of commissions, counsel fees and costs. See Moore's Estate (No. 1), 228 Pa. 516, Crawford's Estate, 307 Pa. 102, and Sparks' Estate, 127 Pa. Superior

Ct. 364, affirmed in 328 Pa. 384. In the instant case, however, the auditing judge joins in this opinion.

Mr. Behring successfully maintained a written option to purchase certain of decedent's stock. See Rosenthal's Estate, 335 Pa. 49. As stated in the adjudication, Behring also successfully defended a codicil to the will, wherein he was named as a beneficiary: Rosenthal's Estate, 339 Pa. 488. In the option case (Rosenthal's Estate), 35 D. & C. 117, Judge Ladner, the opinion judge, wrote (p. 118) :

"We do not wish our action in dismissing the exceptions, however, to be interpreted as an approval of petitioner's course in continuing to remain as one of the executors of the estate against which he found it necessary to litigate".

And in affirming the decision of this court Justice Linn (335 Pa. 49, 64) wrote:

"The learned court below in its opinion noted that its decree in this case was not to be interpreted as an approval of Behring's course in remaining an executor while prosecuting this suit."

Manifestly in prosecuting a specific performance suit against the estate Mr. Behring was acting antagonistically toward the estate as respects one asset. However, he was opposed therein by two co-fiduciaries—one of whom was a trust company—and also by the guardian and guardian ad litem of the minor children. At no time was the interest of the estate without adequate protection and defenders. On the other hand, if the co-executor and trustee was properly in possession of a lawful option to purchase the stock—and this court and the Supreme Court decided that he was—while it might appear that Behring's conduct in a dual capacity was unwise and lacking in good taste, in view of the bitter and extended litigation, yet this court is of opinion that there was nothing fraudulent or so grossly improper in his conduct that it would justify a forfeiture of his entire compensation.

It is stipulated in the record that beyond the litigation over the option, "so far as the administration of the estate goes, Mr. Behring acted normally just like any other executor, and participated in the administration of the estate to the full extent."

We regard Davidson's Estate, 334 Pa. 389, cited in the adjudication, as a guide in the present situation. There a decedent was indebted to a bank. He appointed the bank and an individual executors. During settlement of the estate a conflict of interest arose as to the corporate fiduciary, viz: its rights as creditor and duties as executor concerning the collection of the indebtedness. Upon an accounting the executors claimed approximately $40,000 commission. The court below, affirmed by the Supreme Court, carefully weighed the value of the services rendered by the bank to the estate, and the services for its own benefit. Accordingly the court allowed one half the commission claimed, to the individual, but reduced the corporate fiduciary's compensation to $7,500.

Behring paid into the estate $229,200, being the purchase price of 1,528 shares of stock at $150 per share, in accordance with the provisions of the option signed by decedent, and confirmed by this and the Supreme Court. We are of opinion that Mr. Behring should not be entitled to commission on this asset. Had he been a debtor to this amount he would not have been allowed commission thereon: Landis et al. v. Scott, 32 Pa. 495; Barhite's Appeal, 126 Pa. 404; Hoffer's Estate, 156 Pa. 473; nor on partnership assets where decedent and fiduciary were partners: Mamaux's Estate, 274 Pa. 533; Eisenlohr's Estate, 258 Pa. 431. As respects this particular asset, Mr. Behring, in the litigation, was acting primarily in his own behalf.

The auditing judge properly allowed commissions at four percent upon principal, because the fiduciaries are both executors and trustees, and upon the circumstances narrated in the testimony.

According to the account the corpus of the estate amounted to $529,394.22. Commission at the rate of

four percent amounts to $21,175.77, or $7,058.59 to each of the three fiduciaries. As respects Mr. Behring, the proceeds of the litigated option being deducted, the result is as follows: $229,200 deducted from the gross corpus leaves $300,194.22, and one third of four percent commission thereon to Mr. Behring amounts to $4,002.58. As credit for the full one-third commission of $7,058.59 is taken in the account, the difference or $3,056.01 is stricken therefrom and added to the principal of the estate.

There is a suggestion of an agreement of the fiduciaries as to the allocation of the commissions among themselves, but we must refuse to pass upon any such agreement as this is a subject over which this court has no jurisdiction. See the footnote to Mr. Justice Stern's opinion in Davidson's Estate, supra, p. 391.

The will erects a trust for the benefit of grandchildren; the codicil carves out a portion of the net income bequeathed to the grandchildren, and gives it to Mr. Behring; a dispute arose as to whether the words in the codicil "starting one year from the date of my death" should be interpreted to mean that Mr. Behring was entitled to one half the net income earned since the death, but payment thereof deferred for one year, or whether Mr. Behring was not entitled to one half the income earned during the first year following the death of testatrix. Certain income has accumulated in the hands of the executors and is undistributed.

The auditing judge refused to pass upon the disputed question of law, and awarded the corpus of the trust and all accumulated income to the accountants as trustees, and directed postponement of consideration of this question until the audit of the trustees' account.

It has been decided by both the Superior and Supreme Courts that, where income has been collected by the executors, the cestui que trust need not await the transfer of the fund to the trustees, but may receive it at the hands of the executors: Band's Estate, 103 Pa. Superior Ct.

553; Brown's Estate, 190 Pa. 464. We are of opinion that we are required to construe both the will and codicil, as respects this trust, at this time.

Article IV of the will passed the residue to the trustees "to pay over the net income therefrom *from the date of my death* . . . unto my grandchildren [ad nominatim]". The codicil altered the will in the following language: "to pay over one half the income therefrom *starting one year from the date of my death,* quarterly, unto Frank D. Behring. . . ." (Italics supplied.)

In construing a will the intent of testator is the polar star: Sarver's Estate, 324 Pa. 349; precedents are of little value: Kirkpatrick's Estate, 280 Pa. 306; Brennan's Estate, 324 Pa. 410; the intent is to be gathered from the *whole* will, and not from a few clauses: Williamson's Estate, 302 Pa. 462; Fletcher v. Hoblitzell, 209 Pa. 337; a codicil and a will must be construed together as one instrument: Ketcham's Estate, 22 Dist. R. 966; Thomas' Estate, 241 Pa. 290; Dutton's Estate, 301 Pa. 94; and a codicil is only permitted to change a will to the extent it is inconsistent with it: Whelen's Estate, 175 Pa. 23; Schattenberg's Estate, 269 Pa. 90; Rainear's Estate, 304 Pa. 539.

With these principles as a guide we have carefully considered the will and the codicil. Had the words of the codicil stood alone, without relation to the terms of the will, it may be debatable whether the words "starting one year from the date of my death" merely *postponed the date of payment* of the accrued income: McDaniel's Estate, 3 Pa. C. C. 363; Klinger's Estate, 17 Dist. R. 126. But here there was a gift to grandchildren of the net income *"from the date of my death"*. This bequest was cut down by the gift of one half the net income to Behring *"starting one year from the date of my death"*. There seems not to be the slightest question that, considering both testamentary instruments, testatrix intended the grandchildren to enjoy all of the income starting from the date of her death, except that portion she later gave to

Behring and in express terms; the gift of income to him was not to commence until one year from the date of death.

Furthermore, if Behring's contention be correct, what function does the word "quarterly" perform? How could income be due at once, deferred for a year, *but* at the same time be payable "quarterly"?

We decide that Frank D. Behring is only entitled to one half the accumulated income starting one year from the date of decedent's death, in accordance with the terms of the trust, and it is so awarded to him.

Perhaps the auditing judge, in awarding counsel fee to the guardian out of income, inadvertently overlooked directing that such payment be made out of income *due the minors*. Certainly this payment was not a charge against Mr. Behring's share of income, but against the minors' shares. It is so ordered.

The exceptions are sustained, and the adjudications, as herein modified, are confirmed absolutely.