# APPEAL OF JOHN W. WALKER ET AL., EXECUTORS.

### APPEAL FROM THE ORPHANS' COURT OF ERIE COUNTY.

Argued April 25, 1887—Decided May 23, 1887.

A testator in his will provided: "I direct and will that my children shall live together and occupy together my homestead, including the entire Seventh street property, for the period of fifteen years after my death at least, and as much longer as meets with the approval of a majority of my children." In a latter part of his will, he provided: "I will and direct that my personal estate, after the payment of all my debts, shall be divided among my heirs, share and share alike, and my real estate, after the expiration of the time herein named for the occupancy of the homestead by my children." *Held*,

1. That there was no authority in the will for the payment, out of the personal estate, of the household expenses of the children remaining in the homestead after the testator's death.
2. That, while it might be just and fair, if parties in interest were willing, to adjust in the account of the executors the rents and profits received and the expenditures for taxes, insurance and repairs, yet where objections are made and, as by the terms of the will the real estate was neither given into the charge of the executors nor converted into personalty, these subjects were improperly embraced in the account and were rightly excluded.

Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.; PAXSON, J., absent.

No. 210 January Term 1886, Sup. Ct.; court below, No. 35 September Term 1881, O. C.

The parties to this cause were John W. Walker and Thomas M. Walker, executors of the last will of John H. Walker, deceased, appellants, and Mrs. Catharine Davenport, Mrs. Belle M. Armstrong, Mrs. Mary Beemer, children and heirs of said deceased, and E. L. Whittelsey, guardian of Catharine D. Davenport and Catharine D. Armstrong, devisees of Harry Walker, deceased, appellees.

John H. Walker died January 25, 1875, having left a will dated August 15, 1874, in which he appointed his sons, John W. and Thomas M., his executors. Said will was duly pro-

Statement of Facts.

bated, and letters issued.    On April 11, 1881, the executors settled their first and partial account, to which exceptions were filed by the other heirs, and an auditor was appointed to hear and determine them.

The material facts as found by the auditor, MR. E. CAMP-HAUSEN, were as follows:

John H. Walker, late of the city of Erie, died January 25, 1875, leaving a large estate which he disposed of by will.    At the time of his death he resided at his homestead on Seventh street in the city of Erie, and his family then consisted of John W. Walker and wife, H. W. Armstrong, wife and child, Mary Walker (now Beemer), Harry Walker and Thomas M. Walker and wife.    Mrs. Kate Davenport was the only one of the children of the testator not living with him at the date of his death.

The testator, by his will, after directing that his debts and funeral expenses should be paid, directed as follows:

In the second place, I direct and will that my children shall live together and occupy together my homestead, including the entire Seventh street property, for the period of fifteen years after my death at least, and as much longer as meets with the approval of the majority of my children; a majority of my children in the meantime shall have the right to partition or sell the whole or any portion of the homestead property. The executors are hereby directed and empowered to make the deeds of partition or sale without application to court.

He next charged his real and personal estate, subject to certain exceptions, with the payment of his debts, and after disposing of portions of his estate, the particulars of which are not material to this issue, provided as follows:

In the next place, I will and direct that my personal estate, after the payment of all my debts, shall be divided among my heirs, share and share alike, and my real estate, after the expiration of the time herein named for the occupancy of the homestead by my children.

The accountants were appointed executors, and letters duly issued to them.

In April, 1875, H. W. Armstrong and family and Mrs. Beemer left for Missouri, and never made the homestead their home thereafter, but occasionally visited there, and when

in Erie made it their home. The families of John W. Walker and Thomas M. Walker occupied the homestead property jointly until July, 1879, when John W. Walker moved into his present residence on the Seventh street property.

The homestead was called Harry Walker's home, although he spent a large portion of his time after his father's death in Missouri and Texas. He died in Missouri, April 6, 1879.

The executors took charge of the estate of the testator, collected moneys due the estate, also received the rents accruing, and dividends on stocks, made sales of real estate, and paid for repairs to real estate, taxes, debts of the real estate, etc. Furthermore they paid all household expenses necessary to maintain the establishment at the homestead, and charged them to the estate. They also distributed a portion of the assets of the testator amongst the legatees.

April 11, 1881, the executors filed an account, charging themselves with the amount of the inventory and also rents, dividends, etc., and claiming credit for disbursements made as before stated.

Harry Walker devised his property to Catherine D. Davenport and Catherine Armstrong, for whom E. L. Whittelsey was appointed guardian. He, the guardian, obtained leave September 6, 1883, to file exceptions to the account, and the same day filed numerous exceptions, the most material of which are to the effect that accountants had not charged themselves with all moneys received, nor with interest upon the funds in their hands; and objecting to all disbursements for household expenses, taxes, repairs, payments to legatees, etc.

The items objected to are so numerous that it is impracticable to notice them in detail. In fact, the whole dispute largely turns upon the construction to be given to the will of the testator, and the decision of that question settles many items in dispute.

The accountants contend that the will authorizes them to pay household expenses and make all other necessary expenditures required, such as payments of taxes, repairs, etc., for the period that the testator provided that his family should occupy the homestead property.

The exceptants contend that such expenditures were not and are not authorized by the will. That while the testator in-

tended that his family should occupy the homestead for fifteen years, if the members thereof desired, he did not contemplate nor authorize the expenses of the family to be paid from his estate.

The auditor found as matter of law:

1. That the testator did not contemplate that the household expenses of a home for the family should be paid by the estate, and the credits claimed for such expenditures were disallowed.

2. That under the authority of Bishop's Est., 10 Penn. St. 469; Fross's App., 105 Idem 269; Com. v. Hilgert, 55 Idem 236; Haslage v. Krugh, 25 Idem 99; 1 Rhone O. C. 276; Blight v. Wright, 1 Phila. 549, as the executors, while authorized to sell parts of the real estate, were not directed to do so and thus the real estate was not converted into personalty, the items of rent, taxes, insurance, repairs, etc., must be stricken from the account.

3. That, as the estate was indebted and all the yearly balances could have been immediately applied to the payment of the indebtedness but were not, the accountants should be surcharged with the sum of $8,911.52, an aggregate of interest on yearly balances from February 3, 1876, to July, 1885.

To the report of the auditor based upon his findings of law and fact, exceptions were filed by the executors, which, after argument, were disposed of by the Court, S. S. MEHARD, P. J., in the following opinion:

[The first exception filed on behalf of accountants complains that the auditor erred in striking from the account filed, the credits therein claimed for the household expenses of the family which occupied testator's homestead property on Seventh street, in Erie, from the time of testator's death until the filing of this account. Accountants base their claims for these credits on the second clause of testator's will, which is as follows, viz.: "In the second place I direct and will that my children shall live together and occupy together my homestead including the entire Seventh street property for the period of fifteen years after my death at least, and as much longer as meets with the approval of the majority of my children; a majority of my children in the meantime shall have the right to partition or sell the whole or any portion of the

homestead property. The executors are hereby directed and empowered to make the deeds of partition or sale without application to the court."

Viewing this clause of the will by itself we fail to perceive anything to warrant the construction contended for by the accountants. The subject of the clause is the homestead property, and standing alone this part of the will does not intimate that testator had any other property real or personal. The testator " directed and willed " that his children should live together and occupy together his homestead. Did he intend that his children should live together in idleness, to sit down and eat up the property his industry had gathered together? From the above clause alone we cannot draw such a conclusion. In it we see only a direction that his children should live together, without any provision for their maintenance, further than a grant of a right to occupy the homestead property.

The clause of this will next to the last is, we think, in direct conflict with accountants' interpretation of that above quoted. The clause referred to is as follows, viz.: " In the next place I will and direct that my personal estate, after the payment of all my debts, shall be divided among my heirs, share and share alike, and my real estate after the expiration of the time herein named for the occupancy of the homestead by my children."

It is evident from this that by the former clause the testator had contemplated a grant only of a right to occupy the homestead; for here he directs an equal division of his personal estate at a time different from the time when his real estate should be divided, and at a time which did not at all depend upon the occupancy of his homestead by his children. Moreover, with the exceptions particularly set forth in other parts of the will, it is clear from this clause that the main intent of the testator was an equal division of his property among his children; but if the household in the homestead was to be maintained out of testator's estate, no division could be had, for it was in the power of a majority of the children to continue that household for the period of fifteen years at least after testator's death, and as much longer as they might see fit. In other words, the majority could consume not only their own share of the estate but also the shares of all the

others, who either from choice or necessity should not form a part of the homestead household. We think the will is so free from ambiguity on the point in question that it is not necessary to consider the evidence taken as to the surroundings of the testator when it was made.] [1]

It is contended that even though the accountants erred in their construction of the will, that the other beneficiaries are estopped from objecting to the credits for the household expenses. The evidence, however, does not disclose facts essential to an estoppel. The accountants occupied the homestead with their families. One of the other children of testator was not a member of testator's family at the time of his death, nor an inmate of the household afterwards. The other children left shortly after testator's death. It does not appear that any of the children of testator induced accountants to expend any of the sums for which credit is claimed or that they had any knowledge until this account was filed that the accountants were maintaining the homestead household out of funds of their father's estate. [In view of the evidence therefore and of the will itself we conclude that the credits referred to in the first exception were properly stricken out of the executor's account.] [1]

Accountants' second exception complains of the action of the auditor in striking from the credit side of their account all disbursements for taxes, insurance and repairs on the realty of decedent's estate.

[Testator's will does not contain an imperative direction to sell any of his real estate, and so far as the Seventh street property was concerned they had not authority to make sale of it, but simply authority to complete a partition or sale decided upon by the majority of the children. There was therefore no change made by virtue of the will itself in the character of any of the real estate : Peterson's Appeal, 88 Penn. St. 402. Then, as the real estate of testator was not given into the immediate charge of the executors, they ought not, in this account, to be credited with any disbursements made on account of real estate unsold by them, nor should they be charged with rents received, if they accrued after the testator's death: Bishop's Estate, 10 Penn. St. 469 ; Haslage v. Krugh, 25 Idem 99 ; Montier's Estate, 7 Phila. 491. It fol-

lows that the credits referred to in this exception were properly struck from the credit side of executor's account; and that all charges embraced in the debit side for rents received which accrued after the testator's death must be deducted therefrom.] [2]

The third exception filed by accountants complains that the auditor erred in surcharging them with $8,911.52 of interest.

[A careful examination of this account shows that the cash actually received by the executors each year was in excess of the payments made by them on debts of the estate and expenses in settling the same.] [3] It also appears from the evidence that at the time of his death the testator owed to the Second National Bank of Erie a note in the sum of $21,000, which fell due shortly afterwards, and was renewed in the same amount from time to time by the executors, until October 30, 1879, when they paid it. On the other hand, it appears that the executors made payments to some of the legatees on their legacies.

While the auditor very properly struck out from the credit side of this account all payments made to distributees, yet we think that such payments as were made to legatees other than the executors themselves, ought to be considered in adjusting this question of interest. The contention here is not between the accountants and creditors of decedent, but between the executors and legatees. We think it manifestly unjust to surcharge accountants for the benefit of legatees with interest on money in the hands of the legatees themselves.

It is true the payments are not equal; some have been paid much, some little, and one almost nothing; but we apprehend the inequality can be rectified on distribution. [The payments made to distributees, which ought here to be considered, are such only as were made from money received by legatees other than the executors, for they should not have taken any part of their shares out of the estate while debts remained unpaid.] [3] The learned auditor, we think, was overstrict in beginning the calculation of interest on February 5, 1876. The executors could reasonably be indulged after that time long enough to enable them to prepare and file their account. We have accordingly commenced the calculation of interest on April 11, 1876. While it is considered that the executors

must be charged with interest on yearly balances, because those balances should have been applied on the indebtedness of the estate, and because there was undue delay in filing their account after all indebtedness had been paid, yet, in view of the fact that this is not a final but only a partial account, we are of the opinion that the calculation should be made only up to the date of filing the account. The presumption is that accountants are not chargeable with interest after that date and during the pendency of proceedings on exceptions: Hoopes v. Brinton, 8 W. 73; McElhenny's Appeal, 46 Penn. St. 350; Dietterick v. Heft, 5 Idem 94. True, this presumption may be overcome by circumstances, as in Yundt's Appeal, 13 Penn. St. 575, and Bruner's Appeal, 57 Idem 46. If this were a final account we would be called upon to dispose of this question: See Wither's Appeal, 16 Penn. St. 151. But as the determination of it depends largely upon facts concerning which no evidence has been adduced, no decision is here made as to whether the executors ought to be charged with interest on the moneys in their hands as shown by this account, since the date it was filed, but that question is left to be determined when a further or final account shall have been filed. Other exceptions to the auditor's report were filed by the accountants, but have been withdrawn; we will therefore proceed to the consideration of the exceptions to their report, filed on behalf of the legatees. . . . . .

On final decree after a re-statement of the account in accordance with this opinion, the executors took this appeal assigning for error:

1. The ruling in the parts of the opinion embraced in [ ][1]
2. The ruling in the part of the opinion embraced in [ ][2]
3. The ruling in the parts of the opinion embraced in [ ][3]

*Mr. John P. Vincent* and *Mr. J. Ross Thompson,* for the appellants:

1. We refer to the rules of interpretation in 3 Jarman 705, (rules 10, 13, 21), and Wigram on Wills, rules 5 and 6, cited in 1 Jarman 709–10; applying which to the facts and circumstances existing and surrounding the testator when he made his will, we insist that he intended that his family should live together in his old homestead as a family, supported and main-

tained as they had always been, until a majority decided otherwise by a partition and sale, which would of course break up that arrangement; and we further contend that all the other provisions of the will must be construed in subordination to this leading idea.

2. The executors should have credit for all the disbursements stricken out by the court below, because they were all made in good faith in the care and preservation of the property of the exceptants themselves, who did not offer to pay them and do not pretend that they did. Even if these payments are an impropriety in the account, they should have been considered in making an annual balance to surcharge the executors with interest. But it was admitted that the executors were in possession of the real estate and were chargeable with the rents and profits received on the same. If chargeable, they must be credited with all proper disbursements on account thereof: Derbyshire's Est., 11 W. N. 22; Bowker's Est., 5 Idem 493; Keller's App., 8 Penn. St. 288; Bosio's Est., 2 Ash. 437; Thomas's Est., 11 Luz. L. Reg. 286; Getz's Est., 6 W. N. 416; McNair's App., 4 R. 148; Dundas's App., 64 Penn. St. 325; Springer's Est., 51 Idem 342.

3. From the annual balances in their hands, the executors had a right to retain a considerable sum to meet demands that might arise, and this should have been considered in stating an annual interest account: Davis's App., 23 Penn. St. 206; Lukens' App., 47 Idem 356; Parker's Est., 64 Idem 307.

*Mr. E. L. Whittlesey* (with him *Mr. J. W. Wetmore*), for the appellees :

1. The intent of the testator is to be gathered from the four corners of the will: Horwitz v. Norris, 60 Penn. St. 261; Sheets's App., 82 Idem 213. In doubtful cases, the law favors equality : France's Est., 75 Penn. St. 220; Fahrney v. Holsinger, 65 Idem 388. Our construction of this will promotes equality and equity, and permits the will to stand in full force in all its parts.

2. The testator did not intend that the accountants should pay taxes, insurance and repairs to real estate out of the personal estate, as he provided that a distribution thereof should take place at the end of one year. As executors the appel-

lants had nothing to do with the collection of rents from the real estate, or the payment of taxes, etc.: Fross's App., 105 Penn. St. 258. They were not in possession as executors, but as tenants in common: Landis v. Scott, 32 Penn. St. 495; 1 Rhone O. C. 276; Haslage v. Krugh, 25 Penn. St. 97.

3. The accountants are clearly liable for interest after one year from the death of the testator, and it is for them to show what has been done with the money: Hockley v. Wilcox, 1 Binn. 194; Findlay v. Smith, 7 S. & R. 263; Bitzer v. Hahn, 14 Idem 232; English v. Hervey, 2 R. 305; Harland's Accts., 5 Idem 333; Biles' App., 24 Penn. St. 335; Clauser's Est., 84 Idem 51.

OPINION, MR. JUSTICE CLARK:

Upon a careful examination of this case, we are of opinion that the conclusions of the learned judge of the Orphans' Court are correct, and we deem it unnecessary to consider at length the several assignments of error, as in so doing we would but reiterate the views so well expressed in the opinion filed.

The learned court was certainly right in refusing to allow the accountants a credit for the living expenses of the testator's family, after his death, under the second clause of his will. "I direct and will," says the testator, "that my children shall live together, and occupy together my homestead, including the entire Seventh street property, for the period of fifteen years after my death at least, and as much longer as meets with the approval of a majority of my children." This provision of the will is certainly plain; there is no ambiguity or uncertainty in the language of the testator, which calls for explanation, nor is there in the context any repugnancy which requires construction, to reconcile even a seeming inconsistency. The testator's plainly expressed wish is, that his children should not be separated by his death, but that they might "live together and occupy together" the old homestead. He doubtless desired that, as long as a majority of his children was satisfied, the family relation might, for the benefit of his unmarried children, be maintained after his death as before; but there is not the slightest suggestion by the testator that the family was not to be self-supporting. The continuance of

Opinion of the Court.

the family relation in the joint occupancy of the homestead was one thing, and the expenses incident to the support of the family quite another. If the testator had really intended that the entire living expenses of a family of eight persons should be supplied out of his estate for fifteen years or more, it is most remarkable that he did not say so ; it is scarcely probable that he would leave a matter of that importance to mere inference. Indeed, if the testator had so intended, we might reasonably expect to find some portion of his estate set apart as the source of these supplies. No such provision is made however; on the contrary, he provides that after his debts are paid his personal estate shall at once be divided among his heirs, share and share alike ; and his real estate, which is not shown to be sufficiently productive for the purpose suggested, to be equally divided, after the expiration of the time named for the occupancy of the homestead by his children.

The manifest and main design of the testator was, with certain exceptions, particularly designated, to effect an equal distribution of his estate among his children ; and that distribution, as far as the personal estate is concerned, was to be immediate, or as soon as the claims of his creditors could be satisfied. The theory of the will advanced by the appellants is clearly inconsistent with the obvious purpose of the testator. If the majority of the heirs might maintain themselves out of the funds of the estate for fifteen years, or as much longer as they should themselves see fit, an equal distribution of the estate is made impossible ; for, as the learned judge of the court below well said, they could consume not only their own shares, but also the shares of the others, who either from choice or necessity should not form a part of the homestead household.

It is admitted that John W. Walker and Thomas M. Walker, the executors, have been in the possession of the testator's real estate since his death, and that with the exception of the Seventh street property they are chargeable with the rents and profits received therefrom ; but, as by the terms of the will, the real estate was neither given into their charge nor converted into personalty, the rents and profits, and also the taxes, insurance and repairs, were improperly embraced in the account. These items were therefore rightly excluded from the

account by the court.   It is plain, that the testator did not contemplate that the executors would be chargeable with the payment of the taxes, repairs, etc.   They were not authorized to receive the rents or profits of the real estate, and the entire personalty was to be distributed as soon as the debts were paid; hence they would have no funds in hand with which to discharge these incidental charges upon the realty during the fifteen years or more of the occupancy of the homestead by the testator's family.

As the realty as well as the personalty was to be equally divided among the testator's children, and the creditors have all been paid, it would be just and fair enough perhaps, if the parties were willing, to allow the rents and profits received, and the taxes, insurance and repairs expended, to be adjusted in the account; but it was contended, on the part of the appellees, that the accountants had not in fact charged themselves with all the rents which they had actually received, and as the accountants were not legally bound to charge themselves with any of these rents, it was, of course, futile and useless to enter into a contest of the account respecting the rents alleged to have been omitted.   The only practicable method of procedure, therefore, was to turn the parties over to a forum which had proper jurisdiction of the subject matter in dispute, and in which their respective rights might be ascertained and properly adjudicated.

The adjustment of the interest on the moneys remaining in the accountants' hands, and which were not applied to the debts, was as favorable to the accountants, we think, as they had any right to expect.

We find no error in this record and the

> Decree of the Orphans' Court is therefore affirmed, and the appeal dismissed at the cost of the appellants.