The order is affirmed and the appeal dismissed at the costs of the appellants.

---

## APPEAL OF ALEXANDER BARHITE, EXR.

[ESTATE OF JOHN BARHITE, DECEASED.]

FROM THE DECREE OF THE ORPHANS' COURT OF ERIE COUNTY.

Argued April 30, 1889—Decided May 13, 1889.

[To be reported.]

1. Where a young woman lived with her grandfather as a member of his family for a number of years prior to his death, she is not entitled to be paid for services rendered by her, without proof of an express contract therefor.

2. Whatever the nature of her services, whether the performance of household duties or assistance rendered in the transaction of his business, indefinite declarations of the grandfather that he would pay her, etc., are insufficient to establish a contract for such payment.

3. An executor is not entitled to the allowance of a commission upon an advancement made by the testator in his lifetime, or upon his own indebtedness to the estate, brought into the amount with which he has charged himself.

4. Under the circumstances of this case, the accountant's commission upon the portion of the estate upon which he was entitled to commissions, was properly fixed at five per cent, and, the audit having been rendered necessary by his unfounded charges, it was not error to impose the costs thereof upon the accountant.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 393 January Term 1889, Sup. Ct.; court below, No. 2 February Term 1887, O. C.

On February 7, 1887, Alexander Barhite, executor of the

will of John Barhite, deceased, filed a partial account showing a balance in his hands of $15,812.57. The accountant claimed credit, inter alia, for $3,675 paid to Carrie Barhite for services rendered the decedent during his lifetime, and for $2,100, as commissions at the rate of six per cent upon the total amount with which he had charged himself, to wit, $35,080.65. Of the items which made up this last mentioned amount, there was one of $5,000, charged as an advancement to Wesley Barhite, a son of the testator and a legatee, and another of $4,337.27, which represented an indebtedness of the accountant himself to the testator.

Exceptions having been filed by Wesley and Peter Barhite, legatees, inter alia, to the credit claimed for the sum paid to Carrie Barhite, and to the allowance for commissions, *Mr. D. B. McCreary* was appointed auditor to hear and determine the exceptions and, if necessary, to restate the account.

The auditor found, in substance, that the testator died on January 26, 1886, near eighty years of age, bequeathing his entire estate to his three sons, Alexander Barhite (the accountant), and Peter and Wesley Barhite. His wife had died about ten years before his death, and soon afterward all his children married and left home. About nine years before he died his granddaughter, Carrie Barhite, the daughter of the accountant, came from the home of her father in Iowa, at her grandfather's request, to live with him. She was then between 18 and 19 years of age. Her grandfather had a large estate; though living on a small parcel of ten acres of land, he did a large business as a money lender, the inventory of his estate at his death aggregating over $90,000. The granddaughter, Carrie, kept house for him, performing all the ordinary household duties, and occasionally assisted him in the outside work on the place. He furnished her clothing, but she never demanded or received from him any money. He was unable to read or write, and she rendered him very valuable aid in the transaction of his business, computing interest for him and keeping his business in shape. After his receipt of letters testamentary, the accountant had paid to Carrie Barhite, who was his daughter, the sum of $3,675, for her services to her grandfather, and had taken her receipt therefor.

There was testimony that when the testator sent the request

for his granddaughter to come and live with him, it was accompanied by a statement "that he would pay her," and that in speaking of her services in his financial affairs he frequently said "he did not know how he could get along without her, and that he intended or would pay her well." There was no evidence of an express contract to pay, made between the parties themselves.

The auditor found, "first, that in the absence of an express contract, which in this case the evidence does not show, Carrie Barhite cannot recover compensation from her grandfather for the labors and duties of the household; second, that for her services rendered him in his business transactions there was an implied obligation on his part to pay her what they were reasonably worth." He found also that as her claim against the estate was an entirety, it was not affected by the statute of limitations, and, determining from the testimony that $410 per year would be a fair compensation for her entire services, and $120 per year a reasonable amount to deduct for household duties performed, making $290 per year, or $2,537.50 as the entire amount of her claim, the auditor sustained the exception to the credit claimed for the payment to her, to the extent of $1,137.50. Upon the exception relating to the commissions, the auditor disallowed commissions upon the advancement of $5,000 to Wesley Barhite and upon $4,337.27, which represented the accountant's own debt to the estate, reduced the commissions upon the balance to five per cent, restated the account accordingly and charged the costs of audit to the estate.

To this report, Peter and Wesley Barhite filed exceptions alleging error in allowing any credit for the payment to Carrie Barhite, and in charging the costs of audit to the estate. The accountant also filed exceptions alleging error in not allowing credit for the full payment made to Carrie Barhite, and in reducing his commissions upon the estate accounted for.

On August 27, 1888, the court, GUNNISON, P. J., filed the following opinion:

The first exception on behalf of Peter and Wesley Barhite is to the amount allowed the accountant for his payment to Carrie Barhite, and the refusal of the auditor to sustain in whole the second exception to the account filed by the executor.

Opinion of Court below.

The learned auditor has found as a fact that Carrie Barhite went to live with her grandfather without any express contract on his part to pay for her services; that she was not there as a servant or employee; and decided that she was not entitled to any compensation from his estate for the ordinary household services performed by her. He is of the opinion, however, that the rule of law which governs in the case of household services, does not apply to the case of the services performed by her for the decedent in the transaction of his business. For those services he has found that she was entitled to compensation. I cannot agree with him in that finding. There was not sufficient evidence upon which to find that an express contract was made to pay her for the household services, and, as to the other services, there was absolutely no evidence of any contract so far as they are concerned. It does not appear that the decedent requested that they be rendered. She was, as the auditor has found, a member of the household, and, while such member, rendered important and almost daily assistance to him in his business transactions; but I can see no distinction, as to her right to compensation, between such services and those for which the auditor has found she was entitled to no compensation. The blood relationship existing between them, together with the family relationship established when she came to live with him, rebut the presumption of any promise on his part to pay for her services, and no express promise was proved. This exception is therefore sustained.

The appointment of an auditor, and the proceedings before him, were made necessary by the erroneous account filed by the accountant, and no sufficient reason has been given why he should not pay the expense incurred. The sixth exception on the part of Peter and Wesley Barhite is therefore sustained. The decision as to the exceptions filed by Peter and Wesley Barhite disposes of those filed by the accountant; they are all dismissed.

The account having been restated and a final decree entered in accordance with the foregoing opinion, the accountant took this appeal, assigning as error the opinion and decree surcharging him with the amount paid to Carrie Barhite, reducing his allowance by way of commissions, and placing the costs of the audit upon him.

Opinion of the Court.

*Mr. William Benson* (with him *Mr. A. E. Sisson*), for the appellant:

The family relation which will rebut the presumption of a contract to pay for services rendered, exists only between parent and child: Smith v. Milligan, 43 Pa. 107. After proof of a relation which entitles a party to wages for services, the law implies a contract to pay, and the declarations of the testator as to his intention to pay are admissible to charge his estate: Gordner v. Heffley, 49 Pa. 163. The statute of limitations did not bar a recovery: Ranninger's Appeal, 118 Pa. 20; and the auditor, who fully canvassed the testimony in the case, imposed the costs of the audit on the estate. It was error for the court, with less opportunity and knowledge of the facts, to reverse his finding.

*Mr. John P. Vincent* (with him *Mr. E. A. Walling*), for the appellees:

Proof of what a testator said he intended to do for his granddaughter will not sustain a suit for wages after his death: Gordner v. Heffley, 49 Pa. 163. The family relation between grandfather and grandchildren is recognized by our laws, and a mutual obligation rests on each for the maintenance of the other: Duffey v. Duffey, 44 Pa. 399. To enable one standing in that relation to recover for services, there must be clear and precise evidence of a contract between the parties; nothing should be left to implication: Neale v. Engle, 5 Cent. R. 907. The accountant's misconduct made a contest necessary, and properly throws the cost on him instead of the estate: Landis v. Scott, 32 Pa. 495.

OPINION, MR. CHIEF JUSTICE PAXSON:

The learned auditor and court below have both found that the family relation existed between Carrie Barhite and her grandfather, the testator, and that there was no express contract by which she was to be paid for her services. Under such circumstances it would require a very strong case, a clear mistake, to justify us in reversing their findings of fact. So far from there being a mistake in this instance, we think the findings referred to are sustained by the evidence. It is true the testator, whose wife was deceased, and who was an old

man living alone, invited his granddaughter, who was living with her father, to come and live with him, and keep his house. She came, and remained for nine years, and until his death. During all this time, there can be no doubt, under the evidence, that she was living with him as a member of his family, and without any contract as regards compensation. It was not alleged that he ever paid her a dollar as wages; on the contrary, she lived with him just as a child would do, her clothing and other expenses for most of the time being supplied by him. There was evidence of his declarations that she was useful to him and should be well paid for her services. These, however, were but the loose declarations which can almost always be proved in such cases, and refer to future intentions, which may mean a provision by will, or other benefit, to be conferred in some other manner. It is incredible, if there was a contract for wages, that she should have remained with him for nine years, and never have demanded nor received a dollar, especially in view of the fact that at one time she applied to her father for money.

This belongs to a class of cases which we do not feel disposed to encourage, and in its own facts, furnishes a sufficient reason why we should not do so. Here we have the case of a farmer's daughter, who at her grandfather's request, makes her home with him and keeps his house. The two were living together, in a small frugal way, on a little place of ten acres. She takes care of his house, and sometimes does the chores out of doors. She has her home with him and he pays her expenses, such as were incident to her condition in life. At the end of nine years the grandfather dies and his granddaughter claims for her services the sum of $3,675 which was promptly paid by her father, who was the executor. No credit was given for her support, clothing or other expenses. Yet, strange to say, this marvelous result would seem to be justified, as to the value of her services, by the testimony of a number of apparently respectable witnesses. Their testimony, however, is chiefly valuable as a curious illustration of the extreme liberality in which some persons indulge with the money of other people. Notwithstanding what the witnesses say, every person of average intelligence knows that this girl could not have made and saved one fourth of that sum in nine years, in any honest employment which she would be likely to obtain.

The learned auditor, while of the opinion that she was not entitled to recover for the household duties performed by her, yet was of opinion that she performed other duties as to which an implied contract might arise, and for these services he allowed her a compensation of $290 per year, amounting to .$2,537.50. It appears that the testator, although living in a small, miserly way, was rich. He left an estate in moneyed securities amounting to about $90,000. He was an extremely ignorant man, and his granddaughter had some education, and was ready at figures. She calculated his interest for him, and gave him what assistance he needed about his papers. It was for these services that the auditor awarded her the sum of $2,537.50. Upon exception, the learned court below reversed the auditor, and held that the claim for these services came within the same rule as her compensation for household work, and disallowed it. In this we think the court was right. The distinction made by the auditor was a distinction without a difference. As was said by the learned court: "The blood relationship existing between them, together with the family relationship established when she came to live with him, rebut the presumption of any promise on his part to pay for her services, and no express promise was proved." I have not considered it necessary to discuss the authorities upon this point. Our own cases are numerous, and are right in a line with the foregoing. Perhaps there is no branch of the law , with which the profession is more familiar.

We find no error in the ruling of the court in regard to the accountant's commissions. He claimed six per cent. upon the personal estate, including an advancement of $5,000, for which there was nothing to do but take a receipt. He also claimed commissions on the sum of $4,337.27, in which he was indebted to the estate. The auditor and court below disallowed commissions on these two items, and reduced the commissions on the residue to five per cent. Under all the circumstances, this was liberal. The estate was large, there were no debts worth speaking of, and no complications. The estate could have been distributed in kind between the legatees—the accountant and his two brothers—without delay or risk. Without desiring to criticise the conduct of the accountant unduly, he appears to have been actuated by a desire to make all he could

out of the estate in a legitimate way. A conspicuous instance of this may be found in his paying the extravagant claim of his daughter, without consultation with the other parties interested in the estate. The court below properly surcharged him with the amount of this payment.

Nor was it error to put the costs of the audit upon the accountant. The audit was rendered necessary by his own unfounded charges.

The decree is affirmed, and the appeal dismissed at the costs of the appellant.