# Morrison's Estate.

*Executors and administrators—Compensation—Real estate.*

While in Pennsylvania lands are assets for the payment of debts, they are not assets in the hands of an administrator, and without an order of the orphans' court he has nothing to do with them. Although he may assume to act in his representative capacity in the management of the real estate and the collection of the income thereof, he is merely the agent, of the heir.

Where an administrator acting in his own interest as an heir, as a trustee for some of the other heirs, possibly as an agent for others, and as administrator, assumes the management and sale of real estate as well as personal property, he cannot, in his administration account, claim for compensation and expenses incidental to the real estate. For such compensation and expenses he must proceed against the heirs. Hoffman App., 185 Pa. 315, distinguished.

*Executors and administrators—Costs of audit.*

Where the failure of an administrator to keep proper accounts makes a reference to an auditor necessary, a part of the costs of the audit may be charged to the accountant, and the balance is properly placed upon the estate if it appears that the audit had been needlessly prolonged by the exceptants.

Argued April 30, 1900. Appeal, No. 325, Jan. T., 1899, by B. G. Morrison, from decree of O. C. Warren Co., Sept. T., 1897, No. 8, in sustaining exceptions to auditor's report, in the estate of Stephen R. Morrison, deceased. Before McCollum, Mitchell, Dean, Fell and Brown, JJ. Affirmed.

Exceptions to report of William C. Neill, auditor.

The facts appear by the opinion of Criswell, P. J., specially presiding, which was in part as follows:

From the evidence it appears that at the time of his death the estate of the deceased was of doubtful solvency. Besides other indebtedness the real estate in both Warren and McKean counties was incumbered by mortgages and judgments. The land in McKean county had been sold for taxes, and the title under the sales had matured in one J. M. Wardwell by reason of a failure to redeem therefrom. The deceased during his lifetime had commenced an action in ejectment to recover the

same from the purchaser, which action was then pending. What has been termed an "improvident bark contract," had been made affecting a part of the timber land in McKean county. After the death of the decedent the ejectment case was abandoned, and in 1887 a proceeding in equity was commenced in McKean county in the name of the widow and the heirs against Wardwell, the purchaser and mortgagee of the lands in that county, resulting in the recovery of the land and finally in an adjustment of the bark contract, the sale of part of the timber thereon for $35,000, and the payment of the Wardwell indebtedness. While the accountant was the principal actor therein, this proceeding, adjustment, sale and payment was made by and in the name of the heirs, the fund not passing through the hands of the administrator as such. In order to raise a working fund the heirs also, in a limited way, undertook the manufacture and marketing of lumber from the land in Warren county, which, after an effort by a creditor to enjoin further work, was soon abandoned.

In addition to the matters mentioned, a considerable sum of money was expended by the accountant in the improvement of portions of the said real estate by repairing and adding to the buildings thereon, and otherwise. To prevent encroachments upon the lines of the larger tract of land in Warren county by adjoining owners, a considerable sum was also expended by him in employing watchmen, erecting shanties for their accommodation, etc.

After the sale to Warner of the Warren county land the accountant, by writings duly executed, was constituted the attorney in fact and trustee of the other heirs for certain expressed purposes, relating to the proceeds of the royalty from, and the working interest in, the lease on the land sold. As such attorney in fact and trustee he received large sums of money, including $4,500 in settlement of the claim for conditional bonus above mentioned, about which a controversy arose resulting in proceedings for an accounting in equity, and final decrees against the accountant and in favor of the other heirs, respectively, for considerable sums. The final adjudication in this matter may be found in Shearman v. Morrison, 149 Pa. 386.

The directing spirit and paymaster in all the matters mentioned, and others, concerning the said land, was the account-

ant. What he did in relation thereto he claims to have done as administrator, in pursuance of the authority vested in him as such and given to him by the heirs. For his services and expenses incurred in connection therewith, and payments made on account thereof, he now claims credit in his account as administrator. The exceptants contend that many of the items referred to are not proper credits in his administration account, and thus the present controversy arises.

It will be observed that the accountant was connected with these matters in various ways. 1. He was interested as an heir of the deceased equally with the exceptants, C. F. Morrison and Mary E. Shearman. 2. He was a trustee for his coheirs by virtue of the writing constituting him such, above referred to. 3. He was acting and sole administrator of his father's estate, and 4. He alleges a general authority given him as administrator by his coheirs, the exceptants, to adopt such measures and do such things as might, in his judgment, be for the best interest of the estate.

The matters growing out of the trust relation referred to have been adjusted as stated. Those arising out of the other relations remain to be settled. In the present controversy we have to do only with those which properly arise out of his administration of the estate. No creditors have intervened or are concerned. The difficulty arises from the inability of the accountant and the exceptants as heirs to agree upon a dividing line between acts properly of administration and those which are extra-administrative in character. A determination of the difficulty involves a consideration of the duties of an administrator as regards the real estate of a decedent under the law. There is no controversy as to the personal estate.

*     *     *     *     *     *     *     *

From this and all the evidence it appears that the only express authority he had from his coheirs, aside from that which was put in writing, was that arising out of the conversation had with them prior to the taking out of the letters of administration, wherein they told him to "go ahead and take this administratorship and do the best you can, and we will be satisfied." From the letters granted to him, pursuant to this conversation, he appears to have assumed that he was authorized

to take general charge of the real estate, care for, manage and dispose of it, in like manner as if it were personalty.

From his own statement, therefore, taken in connection with the denial of the exceptants that there was any "positive agreement" with them by which he was to have "full power" as administrator over the real estate, it must be concluded that no exceptional or exclusive power in this respect was given to him. The writing, marked "Exhibit No. 1," does not sustain any such inference, but rather strengthens a contrary conclusion. If general authority in the premises had been given to him as administrator this paper would have been wholly unnecessary.

It is contended, however, that if the excepting heirs did not expressly authorize in advance his control over the real estate and the disbursements made by him as administrator, that they had full knowledge during the progress of the settlement of the estate of the course being pursued by him, and of what was being done and what expenses were being incurred, and that their assent thereto must necessarily be implied from such knowledge. A reference to the facts will disclose the degree of force to which this argument is entitled.

In August, 1885, the accountant, pursuant to the authority granted him by the orphans' court, made sale of the larger tract of land in Warren county, receiving a cash payment thereon of $15,000. He was then in funds, with additional receipts in prospect. The various items for which he now claims credit, aggregating $904.02, for "protecting lands of the estate," appear from the account and vouchers to have all been contracted and paid subsequent to the sale of the real estate. Those entitled "debts, labor," etc., aggregating $890.97, were all paid subsequent to the sale of the real estate, and, with but few exceptions, all contracted subsequent to that date. Those aggregating $856.96, for "addition and repairs to house," were contracted and paid subsequent to 1888, and some as late as 1895. Those aggregating $129.78, for "sundries," except one item of $6.00 for entrance fee into cemetery, bear date subsequent to the sale. So, excluding the item of $3,000 for compensation of accountant, the same is true with the much larger part of the remaining items entitled "taxes," "hotel bills," "telegrams and postage," "railroad fare and

hack hire," and "sundry legal expenses," for which credit is claimed.

As during much of this time the accountant had in his hands as trustee for the exceptants funds belonging to them, and was making to them sundry payments on account thereof, even if they assented to the expenses incurred by the accountant, it does not follow that it was understood by them that such expenses were incurred and were to be paid by him as administrator. As was said by MEHARD, J., in Shearman v. Morrison, supra, "The defendant (now the accountant) was treasurer and paymaster for the plaintiffs (here the exceptants), as well as for himself. All parties evidently regarded him as the source from which the labor and materials for these repairs and improvements were to be paid. The plaintiffs must have believed that he was paying their proportion out of such of their money as they supposed he had in his hands." The items of expense here referred to, and which the accountant as trustee was then seeking to set off against the trust fund in his hands are largely the identical ones for which he is now seeking an allowance. The fund for which he is now accounting, and which came into his hands as administrator, is as much an appropriated trust fund as that which came into his hands by virtue of the writings signed by the exceptants, for which he was then accounting. Here the terms of the trust and the duties of the trustee are fixed by statute. They are even less subject to the control of the parties than if they were in writing. The entire fund coming into the hands of the administrator was appropriated by law, first, to the payment of debts against the estate. This appropriation, without the knowledge and consent of creditors, could not be changed. We have been cited to no authority and know of none which holds that the terms of such a trust may be enlarged or changed by parol or otherwise by a part of the beneficiaries. The heirs' interest therein comes in only secondarily, and as shown by the account there are still debts unpaid. The trustee gives security for the faithful performance of his duties under the law, and not those arising from subsequent collateral agreements among the heirs. Surely the liability of his bondsmen could not be enlarged without their knowledge or consent.

Under all the evidence and the law, therefore, we conclude

that the duties of the accountant as administrator were not and could not have been enlarged by the exceptants, and that in this proceeding he must account irrespective of any alleged agreements with the heirs, and that any indebtedness due by them to him, by reason of expenses incurred or moneys paid by him on their account, must be adjusted in a separate proceeding between them as individuals.

*Errors assigned* were in sustaining exceptions to auditor's report.

*W. J. Knupp* and *D. I. Ball*, for appellant, cited Wilson's App., 41 Pa. 94, Beck v. Uhrich, 16 Pa. 499, and Oram v. Rothermel, 98 Pa. 300.

*D. U. Arird*, for appellees, cited James's App., 89 Pa. 54, Transue's Est., 141 Pa. 172, Fross's App., 105 Pa. 269, Com. v. Coleman, 52 Pa. 468, Hoffman's App., 185 Pa. 316, Wedekind's Est., 1 W. N. C. 418, Clark's Est., 11 Phila. 53, Eshleman's App., 74 Pa. 42, Light's App., 24 Pa. 180, Bruner's App., 57 Pa. 46, Biles's App., 24 Pa. 335, Mylin's Est., 7 Watts, 64, and Verner's Est., 6 Watts, 250.

OPINION BY MR. JUSTICE FELL, May 14, 1900:

The main contention at the audit related to the accountant's claim for compensation for services and for the allowance of expenses incurred in the management of the real estate of the decedent. All questions relating to these subjects were carefully considered and properly decided by the learned judge of the orphans' court specially presiding. The services of the accountant were of an unusual character and of great value to the estate, but they were not performed by him entirely in his capacity as administrator. He was acting in his own interest as an heir, as a trustee for some of the other heirs, possibly as an agent for others, and as administrator. The allowance made is in excess of the usual amount, being five per cent of the total fund, a large part of which was realized from the sale of real estate. This is all he was entitled to. Whatever claim for compensation and for expenses incurred he may have against the other heirs may be adjusted in another proceeding, but it cannot be considered in this.

While in this state lands are assets for the payment of debts they are not assets in the hands of an administrator, and without an order of the orphans' court he has nothing to do with them. In case of intestacy they descend to the heirs, and if needed for the payment of debts there is a mode pointed out by the act of assembly which the administrator is bound to pursue, "for the real fund is not absolutely, but sub modo, assets in his hands:" McCoy v. Scott, 2 Rawle, 222; Bakes v. Reese, 150 Pa. 44. Although the administrator may assume to act in his representative capacity in the management of the real estate and the collection of the income thereof, he is merely the agent of the heir: Appeals of Fross and Loomis, 105 Pa. 258; Walker's Appeal, 116 Pa. 419. This rule has been strictly adhered to. The refusal of the court to apply it in Hoffman's Appeal, 185 Pa. 315, was on the ground of estoppel, the administrator having collected the rents under an agreement with the heirs and included them in his account, 'and by his conduct having induced them not to resort to another tribunal until the statute of limitations had interposed a bar to a recovery against him. In this case the court finds that there was no agreement and that there were no facts to warrant an inference of the knowledge and assent of the other heirs.

The disposition of the costs of the audit is entirely just. A part of them were charged to the accountant, as his failure to keep proper accounts had made the reference to an auditor necessary, and the balance placed upon the estate for the reason that the audit had been needlessly prolonged by the appellees.

The decree is affirmed at the cost of the appellant.