## In re ESTATE OF LEWIS.

### HOBBS et al. v. WILEY, Gdn.

No. 10872—Opinion Filed Feb. 15, 1921.

Rehearing Denied May 10, 1921.

(Syllabus.)

1. **Guardian and Ward—Final Account of Guardian—Requisites.**

By virtue of section 6565, Revised Laws 1910, and rule 2 of this court (47 Okla. xiv) a guardian in rendering his account is required to attach receipts and vouchers to his report for all charges, debts, claims, and expenses which he has paid, except such as come within the provisions of section ·6438, Revised Laws 1910.

2. **Same—Exceptions to Final Report—Courts—Appeal and Error—Claims and Rents.**

In a guardianship proceeding, where a guardian files his final report and exceptions are filed thereto, and the county court approves or disapproves such report, and an appeal is taken to the district court on questions of both law and fact, the case in the district court is tried de novo as provided by section 6515, Revised Laws 1910.

(a) Where the district court' disallows certain items of expenditure contained in the report filed by the guardian, and no receipt or voucher is attached to the report, and no evidence is offered that the receipts or vouchers have been lost, or that the money was actually expended to discharge a legal obligation against the estate, the order will not be disturbed on appeal.

(b) Where the guardian occupies the premises of his ward, it is not error for the trial court to charge him with the reasonable rental value of the premises, and where the evidence supports the finding of the court as to the reasonable rental value of said premises, said finding will not be disturbed in this court.

(c) Where a guardian reports that he has rented certain lands of his ward and is to receive a portion of the crop as rent therefor, and reports only nominal sums received as rent, and upon a hearing on the exceptions, the evidence discloses that the guardian

purported to rent the land to his minor son, and to a negro employe, the guardian furnishing the team and seed and was to receive one-half of the crop, and no account is kept of the crop raised and no proper return made of the crop grown upon premises, held, it is not error for the court to charge the guardian with the reasonable rental value of the land during said time, and where the amount charged as the reasonable rental value of the land is not clearly against the weight of the evidence, the finding will not be disturbed on appeal to this court.

(d) Where the guardian reports expending certain sums for work and labor upon a farm of the ward, and the court found under the facts the guardian was in fact the renter of the farm himself, and the evidence discloses the money was expended by the guardian issuing checks to his minor children and employes, and they indorsed the checks and the guardian cashed the checks and received the money thereon, it is not error for the court to surcharge the guardian with said items.

(e) It is not error for the court to disallow certain expenditures purported to have been made by the guardian after the ward became of age, under the facts as disclosed in the opinion.

(f) It is not error for the court to surcharge the guardian with the amount allowed the guardian for services, where the evidence disclosed that during said time the guardian had been wasting and dissipating the estate.

3. **Same.**

From an examination of the entire record, held, the judgment of the trial court is not clearly against the weight of the evidence, and will not be disturbed on appeal.

Error from District Court, Muskogee County; Benjamin B. Wheeler, Judge.

In the matter of the estate of Isabelle Lewis, a minor. Exceptions by Thomas J. Wiley, guardian, to final report of former guardian, John M. Hobbs. From judgment of district court on appeal from county court, Hobbs and his surety bring error. Affirmed.

Edgar A. de Meules, Malcolm E. Rosser, and Villard Martin, for plaintiffs in error.

William Neff and L. E. Neff, for defendant in error.

McNEILL, J. This is an appeal from an order of the district court of Muskogee county surcharging John M. Hobbs, the former guardian of Isabelle Lewis, with certain amounts and rendering judgment against Hobbs and the surety on the bond for the amount found due the ward.

Hobbs, as guardian, after the ward reached her majority, filed his final report showing a balance due the ward of $32.48. A short time after the ward reached her majority,

she was declared an incompetent and Thomas J. Wiley was appointed guardian and filed exceptions to the final report of the former guardian, John M. Hobbs. When the exceptions to the report came on for hearing, the county court, without any objection from either side, appointed C. G. McKoin to audit the different reports of the guardian and make his report to the county court. This audit was made, and report of the auditor was filed with the county court. Attorneys for Hobbs filed exceptions to the report of the auditor, and when the final report came on for approval and hearing upon the exceptions, the county court surcharged the former guardian with the sum of $864.85 and rendered judgment for said amount. The surety company appeared and took part in these proceedings. Thomas J. Wiley, the guardian, appealed from said judgment to the district court, and upon trial in the district court the former guardian was surcharged with $6,169.35 in addition to the $32.48 which he admitted to be due the ward, and the court rendered judgment against Hobbs and against the surety company for $6,201.83 From said judgment, John M. Hobbs and the surety company appealed to this court.

Plaintiffs in error admit the former guardian is indebted to the ward's estate, but contend the amount found by the district court is excessive, and have discussed the errors complained of under 12 classifications. It was evidently the purpose and intent of the framers of the Constitution and the members of the different Legislatures of this state, in placing the jurisdiction of the estates of minors in the county court and providing for the appointment of guardians, to prevent their estates from being dissipated and wasted. It would be hard to conceive of a case where the record discloses a more flagrant violation of the duties and trust imposed upon a guardian than in the present case.

Hobbs was appointed guardian of this minor's estate in January, 1915, and continued as guardian until the ward became of age in April, 1918, or a period of three years and three months. At the time he was appointed guardian, the ward's estate consisted of 80 acres of land in Tulsa county and 80 acres in Muskogee county, and perhaps another 20 acres of land in Muskogee county. The estate was also the owner of certain notes secured by real estate mortgages on two separate five-acre tracts of land, and while Hobbs was guardian this land became the property of the minor through foreclosure proceedings, making a total of 190 acres of real estate under the control of the guardian. In addition to this, the guardian purchased a house and lot in the town of Haskell, Oklahoma, for the sum of $425, where the minor resided.

The estate owned other notes and mortgages, and a guardian prior to Hobbs owed the estate considerable money. The guardian collected the income from this property, both real and personal, as follows: Oil royalties, $7,785.43; interest on notes, $886.74; rents from real estate, $403.35; or a total income of $9,075.52. The record discloses that the real estate when the ward became of age was about in the same condition as it was when he took charge of the same. During his three years and three months as guardian he reports paying and expending on behalf of the minor $5,162.97. The other charges and expenses for handling and managing the estate and the improvements purported to be placed on the land, his fees, and attorney fees, amounted to approximately $12,000, this being in addition to the approximately $5,000 paid to the minor.

The evidence disclosed that collecting the oil royalties was simply a matter of form; the land producing the oil was in Tulsa county, and he visited the land upon one or two occasions. His other work consisted of collecting $886 interest and $403.35 rent and looking after 190 acres of land and receiving the amounts due on the notes. He reports that by his "careful and economical" management, he was able to return the real property in about the same condition it was at the time he received it, after expending for his own expenses, attorney fees, taxes, and improvements something like $12,000, or about $4,000 a year. The evidence disclosed that he sold or renewed an oil and gas lease on the Tulsa county land and received $8,000 bonus. This amount was invested in liberty bonds. He received from the former guardian in money and notes that were paid to him approximately $8,000 and the income of about $9,000, making his total receipts in money approximately $17,000 in cash, not including the $8,000 invested in liberty bonds, and as guardian he reports that he has expended for the minor $5000, and of the balance he contends there still remains $32.48 and he is indebted to the ward in that amount.

During the course of about the first two years of his administration, one attorney represented him and was paid $1,000. This attorney was discharged and another attorney was employed, whether to look after this 190 acres of land or what, it is unknown, but he was paid over $1,400 as attorney fees, and the total amount expended by the guardian during this period of his term as guardian amounted to over $10,000. We mention

these facts at this time, not for the purpose of ascertaining the correctness of the court's ruling in charging or surcharging the guardian with certain amounts, but for the purpose of ascertaining whether the guardian has in good faith managed this estate, or whether his acts amounted to a scheme and fraud to deprive the minor of her estate. Before taking up the different assignments in the brief, we will refer to the law relating to the settlement of accounts of guardians as it is applicable to almost all of the different assignments.

Rule 2 of this court (47 Okla. xiv) provides, in substance, that a guardian shall file receipts for the disbursements made by him. Section 6565, Rev. Laws 1910, provides, in substance, that accounts and settlement of accounts of guardians are governed by the provisions of law concerning the estates of decedents. Section 6437, Rev. Laws 1910, provides, in substance, that executors and administrators must file receipts or vouchers for the money expended by them except those that may come within the provisions of section 6438, Rev. Laws 1910.

One of the exceptions filed to the report of the guardian Hobbs was an objection to the allowance of any of the items purported to have been expended as disclosed by the different reports where receipts or vouchers were not attached to the reports and to each and every item of expenditure not authorized by the court. This objection was filed to the reports, specially calling attention of the guardian and court to this fact. Upon appeal from the order of the county court to the district court, the trial of the case in the district court is governed by section 6515, Rev. Laws 1910, which provides for trial de novo where the appeal is taken on questions involving both law and facts. See Tilman v. Tilman, 74 Oklahoma, 177 Pac. 558.

In the trial of the case in the district court all of the reports of the guardian, the annual and semi-annual reports, were introduced in evidence and considered by the trial court. Bearing in mind the provisions of the statutes and the rules of the court requiring receipts or vouchers for disbursements made by the guardian, we will now direct our attention to the different assignments of error.

The first assignment relates to surcharging the guardian $100 in reference to the payment of Muskogee county taxes. The guardian obtained an order to pay $429.26 taxes in Muskogee county, and filed a report to be allowed $429.26 for taxes paid, but filed no tax receipt or vouchers showing the amount he had paid or that he had paid any.

The auditor's report discloses and he also testified that the records of Muskogee county disclosed that the guardian had paid taxes in the sum of $329.26, and the trial court surcharged the guardian $100. The guardian offered no testimony concerning this transaction. It is contended by the plaintiffs in error that there is no evidence to support this surcharge contained in the auditor's report, and the auditor's testimony was incompetent, being hearsay testimony and inadmissible. Admitting that the auditor's report and his testimony were incompetent, if the trial court had followed the law as announced in section 6437, Rev. Laws 1910, and section 6438, Rev. Laws 1910, he should have disallowed the total item of $429.26, as there were no receipts or vouchers attached to this report. The court, by considering the evidence of the auditor and his report, allowed the guardian the sum of $329.26, so we are unable to see how the former guardian has been prejudiced by this evidence.

The second item is a surcharge of $10 payment of taxes in Tulsa county. The guardian filed a report disclosing that he paid $66.83 for the first half of taxes for the year 1915, and the last half of taxes was only $56.83. No receipt or voucher was filed, and the trial court surcharged him $10. It is contended there is no evidence to support this $10 surcharge. Instead of there being no evidence to support the judgment of $10, we think the evidence would support a judgment of $66.83, and no doubt the judgment would have been $66.83 except the trial court gave the guardian credit for what appeared from the auditor's report that he had paid taxes in the sum of $56.83.

The third item complained of was a charge of $525 against the guardian for rent of a house and five acres of land belonging to the minor and occupied by the guardian for 21 months. A former guardian had taken a mortgage upon this property and by foreclosure proceedings the minor acquired the title to the same. While the property was being foreclosed a fire damaged the house, and the insurance, amounting to $800, was paid and expended in repairing the house. The guardian occupied the premises himself, instead of renting the same. The district judge on trial of the case charged the guardian with the rental value of the premises and fixed the rental at $25 per month, or a total of $525. Plaintiffs in error admit that the guardian should be charged with rent, but contend that $25 per month was excessive. The testimony disclosed that $25 was a fair and reasonable rental value of said premises during said time, and in fact there is no evidence to the contrary.

The finding of the court upon this proposition is supported by the evidence, and we think the court committed no error.

The fourth assignment of error is that the court erred in surcharging the guardian with $622 rent on an eighty-acre farm of the ward for the years 1915, 1916, and 1917. This farm had a twenty-acre orchard on it and between 50 and 60 acres in cultivation, and the guardian reported rents collected for the three years, amounting to about $53. The evidence disclosed that the guardian purported to rent the land out to different parties, to wit, to his minor son one year, and the balance of the time to a negro, who worked for the guardian, contending he was to receive crop rent. The evidence disclosed that he had an agreement with these parties that he was to furnish horses and machinery and receive one-half of the crop, and the court found under the facts the guardian was renting the land himself, and that he should be charged with the reasonable rental value of the land. There are many circumstances connected with this transaction which we deem unnecessary to mention, but which would justify the finding of the court that the acts were a fraud upon the minor and the guardian should be charged with the reasonable rental value of the land, and the evidence supports this finding. In regard to the rental value of the land, the witnesses testified the land was worth from $2.50 to $5 per acre per year during the three years. The evidence was conflicting upon this point, and we are unable to say that the finding of the court, which amounts to less than three dollars an acre per year, would be clearly against the weight of the evidence.

The fifth item complained of is an item wherein the court surcharged the guardian $62. The guardian obtained an order from the county court to pay $62 to William Thompson for hauling certain material. The guardian reported that he had paid said amount. The only evidence of the fact was a check, and indorsed upon the check was payment for services for hauling material to the farm west of Muskogee. The check was introduced in evidence, and it was indorsed by Thompson and then indorsed by Hobbs, disclosing that Hobbs had collected the money. Hobbs admitted getting a part of the money, and contended the check was not for hauling material to the farm, but was for some other work on the farm, but exactly what he did not remember, but was of the opinion the check was for hauling brush from the orchard and that Thompson had used his team, and in that way the guardian was entitled to a part of the money. The evidence of Hobbs, the guardian,

disclosed the money was not used for the purpose for which he obtained the order, and the order in this respect was obtained by fraud, unless there was some work actually done which was a charge against the minor's estate, and the burden was upon the guardian to show this, and the evidence does not warrant such a finding. If Hobbs, or even Thompson, was renting the land, we are unable to understand why the minor should pay them for the work necessary to be done on the farm.

The sixth item complained of was a surcharge of $509. This surcharge embraces numerous items. The evidence disclosed that the guardian had issued checks to his employes and to his minor children and the employes and minor children would indorse the checks and the guardian would cash the checks and receive the money therefor. He did have orders to pay for certain work, but there was no receipt or voucher filed for these items except these checks. The work purported to have been done on the farm, which the court held was rented by Hobbs himself, and charged him with the rent, and a portion of the work was pruning trees and work of that kind. The court disallowed the items that were made payable to Hobbs' employes and his minor children and by them indorsed and cashed by Hobbs. If the guardian was liable to the ward for the rent upon this land as a renter, we are unable to see upon what theory the guardian would be permitted to charge the expenses of farming the land and the caring for the orchard to the minor; he being the renter, it was his duty to care for the orchard and pay the expenses for farming the land. The guardian could not expect to be charged with the rent of this land at so much per acre, and then in turn charge the ward with the work to be performed in farming the land and caring for the orchard. We think the court committed no error in disallowing these items.

The seventh item complained of was an item of $42 surcharged the guardian. The record disclosed that the guardian obtained an order from the county court to pay himself $22 for work and $20 for money advanced. The record does not disclose what work or labor was done, nor to whom the $20 was advanced; and before the guardian would be entitled to said allowance, in a case which is coupled with so much fraud, waste, and extravagance, as in the instant case, it was his duty as required by statute to attach vouchers and receipts showing what the money was expended for and itemizing what work he had done.

The eighth assignment relates to certain items the court surcharged the guardian amounting to $823.40. These items were for money purporting to have been expended by the guardian after the ward became of age. The guardian claimed to have paid the same to the attorney and various other parties. The total items claimed amounted to $1,238.40, and the court allowed the guardian $415, but disallowed $823.40.

This ward, as customary where an estate was handled as this one, was considered chattel property, and the guardian contended that upon her becoming of age she was kidnapped and it was necessary to have her returned to her guardian, and in locating her he expended some $1,200 to protect her estate. The record discloses there was a ráce between high-powered automobiles occupied by high-minded citizens to see who could first obtain deeds to the little estate of the ward that the guardian had been unable to spend. The ward disappeared for a few days, and when returned two deeds had been obtained to her property; the attorney for the guardian having obtained a trust deed, but other parties having secured a prior deed, this one became of no value. There was an attempt to prove that all of these things were done with good motives, and the only moving spirit was the protection of the minor's estate. This is hard to believe under this record.

We think the guardian and the attorney, who had successfully managed two eighty-acre farms and two five-acre tracts and a twenty-acre tract at a minimum expense of approximately $12,000 in three years, were very fortunate in having the trial court allow them expenses amounting to $415 in their efforts to still maintain control of the little part of the ward's estate which they had left her. The only error we find concerning this claim was that the court allowed the guardian $415, but, as no appeal has been taken from that part of the order, we are unable to interfere with the allowance of the same as made by the court.

The ninth assignment relates to the order surcharging the guardian the sum of $1,416.66, being a portion of what was allowed him for services as guardian. Plaintiffs in error contend that there is nothing in the record showing such dishonesty and concealment on the part of the guardian as to justify, the disallowance of his compensation, and further contend that the first two years he acted as guardian the court found his former attorney kept him within the law, and the trial court, in commenting on this fact, stated as follows:

"The (former attorney) kept Hobbs strictly in the line of duty while he represented him."

Counsel now insists that Hobbs should at least be paid for the time he did his duty. The court did not surcharge Hobbs with all the compensation he received as guardian, but permitted him to retain $741.40, all of which was received for services rendered prior to January, 1917, but disallowed three claims for compensation thereafter, one charge for $500 and a charge of $914.66 appearing in his final report. The references made to the guardian heretofore sufficiently express the opinion of the court upon this question, as we think the court committed no error in surcharging this amount.

The tenth assignment refers to surcharging the guardian with the sum of $1,665.62 which the guardian had charged for expenses in improving the property known as the Williams property. This was the property occupied by the guardian. The evidence disclosed that immediately before Mr. Hobbs occupied the property $800 was expended upon this house for repairing, which was paid by the insurance company. Mr. Hobbs admitted that the property was in good condition at the time he began to occupy the same. There was testimony that the house was practically in the same condition when Mr. Hobbs left the same as it was when he began to occupy the same, only deteriorated to some extent. There was evidence that the barn had been moved and some big doors placed on the barn, thus enabling Hobbs to shelter his threshing machine. The guardian obtained an order to pay $85.35 for repairing this property, the order reciting that the property was badly in need of repairs and it was necessary to repair the same that it might bring a higher rent. It is admitted by the guardian that he was living in the same and did not advise the county court of this fact when he obtained the order, and that he did not attempt to rent it. He simply contends that the minor had informed him she would give him this property for his services. It is hard to understand how $1,600 could be expended upon property of no more value than this, and no one being able to tell where it had been spent and the vouchers and receipts not being attached to the report. we think the evidence justifies the finding of the court regarding these items.

The eleventh assignment complained of was a surcharge of $150 which purported to have been paid to Perkins Hardware Company. This hardware company had a claim of $1,455. The guardian reported he

had paid the hardware company $150 for a range and furnishings, but obtained no order to pay this claim. He obtained an order to purchase a range and was allowed $65, and admitted that he had never purchased but one range for the minor. The court simply disallowed this one item, as the evidence disclosed that the minor had never received but one range and there was no order to purchase whatever was purchased. We think there is no error in this assignment.

The twelfth assignment or item complained of is that the court erred in charging the guardian with one-half of the costs of auditing the account. How much the court charged does not appear, but it apparently left this for the county court to determine. The authority of a court to employ an auditor to check the accounts of a guardian may differ according to circumstances. The general rule announced in 21 Cyc. 177, is as follows:

"If an audit is rendered necessary by the fault of the guardian, he is properly chargeable with the expenses therefor."

And, as stated in the case of In re Morrison's Estate (Pa.) 46 Atl. 257, the costs of the audit caused by unfounded charges of the executor are properly charged to him. Appeal of Barhite (Pa.) 17 Atl. 617.

From an examination of the entire record we are unable to say that the finding of the court in surcharging each of the said items is not supported by the weight of the evidence. The surety company contends that the guardian was simply careless in his management of the estate, uneducated, and had attempted to administer the estate properly and had no intent to defraud the estate. It does appear that the guardian was like numerous other guardians who have an erroneous idea that when they are appointed guardian they become the owner of the ward's property and it becomes their duty to dissipate and dispose of the estate to prevent any being left for the ward when the ward becomes of age. If the surety company or individuals voluntarily execute the bond of such guardians and permit the guardians to waste and dissipate the property and file no receipts or vouchers for the money expended, they must expect to respond to the ward for the illegal acts and unlawful expenditures made by the guardians.

For the reasons stated, the judgment of the trial court is affirmed.

HARRISON, C. J., and PITCHFORD, ELTING, and NICHOLSON, JJ., concur.