## Mowry's Appeal.

1. Where a conveyance is made with intent to defraud existing creditors, and other parties thereafter, on the faith of the representations of both grantor and grantee that said existing indebtedness was paid, and the grantor still retained his interest in the property conveyed, advanced money to said grantor, said parties may, as to said grantee, avoid the conveyance as a fraud upon them.

2. In 1871, D. loaned money to J., the grantor of certain real estate, on the faith of the representations made to him by both J. the grantor, and M. the grantee, that the deed was intended to defraud the grantor's existing creditors, which indebtedness was paid in 1869, and that J. still retained his interest in the land. In 1873, the grantee assigned the land for the benefit of certain creditors. Afterwards in 1877, on the faith of similar declarations, S. loaned money to J. the grantor. The assignee for creditors sold the land for more than sufficient to pay all the debts for which it was assigned. The surplus was referred to an auditor for distribution, when M., the assignor, claimed it by virtue of his conveyance from J., and it was also claimed by D. and S. *Held*, that M. was estopped by his representations from claiming as against D. and S., and that, under the circumstances, they were entitled to be paid out of the fund.

May 10th 1880.    Before MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.   SHARSWOOD, C. J., and GREEN, J., absent.

Appeal from the Court of Common Pleas of *Bedford county*: Of May Term 1880, No. 22.

Appeal of Andrew Mowry from the decree of the court confirm-

ing the report of the auditor appointed to make distribution of the fund in the hands of the assignee of Andrew, Nathaniel, Zachariah and Isaiah Mowry, arising from the sale of the real estate of said assignors.

The material facts, as disclosed by the evidence taken by the auditor, were as follows: Andrew Mowry and John R. Mowry, brothers, were tenants in common of certain land. John R. Mowry died on the 13th of March 1864, intestate, and leaving a widow and four sons, Nathaniel, Zachariah, Isaiah and Josiah. The real estate of said decedent descended to these four sons in equal shares, subject to the widow's interest.

On the 13th of August 1864, Josiah Mowry, by deed, which was duly recorded, conveyed his individual interest in his father's estate to his uncle, Andrew Mowry. On the 11th of January 1873, Andrew Mowry made an assignment of all his title and interest in said land, and on the 14th of the same month three of the sons of John R. Mowry made an assignment for a like purpose to the same assignee. These assignments were for the benefit of the creditors of the said John R. Mowry, deceased, in trust, to pay the debts of said decedent, and to pay back the surplus, if any, to the assignors. The assignee sold the real estate, paid all the debts, and in 1877 filed his final account, which showed a balance of $5947.36 in the accountant's hands. This fund was referred to an auditor, Moses A. Points, Esq., to make distribution. Before the auditor the only contest was as to the share of Josiah Mowry. It was claimed by Andrew Mowry by virtue of the conveyance to him, and by Samuel Dubbs and Mrs. Susanna Mowry, wife of Josiah Mowry, as creditors of the latter, which debts were contracted respectively in 1871 and 1877. They alleged that although their debts were contracted after the date of the conveyance, and they had knowledge of it, they had loaned the money to Josiah on the faith of representations made to them by both Josiah and Andrew, and particularly by the latter, that the deed was made without consideration and with the purpose of defrauding creditors, to which fraud both grantor and grantee were parties; that it was made with the intent to defeat an existing indebtedness of Josiah's, which debt was paid in 1869, and that Josiah still retained his interest in said property. After taking a mass of testimony directed to this point, the auditor found the facts as claimed by Dubbs and Mrs. Mowry, and reported, inter alia, that Andrew Mowry, by reason of his representations, was estopped from setting up in this distribution a contrary state of facts, and to permit him to do so would be inequitable to the creditors who advanced money to Josiah on the faith of these representations, as well as a fraud upon them. That so far as these creditors were concerned, the interest of said Josiah Mowry in his father's estate was affected with a trust in favor of these creditors, and that the proceeds of the land was

affected with a like trust, and they were entitled to the amount of their debts out of his share of said fund.   The auditor then awarded to Dubbs and Mrs. Mowry the amount of their claims.

Andrew Mowry excepted to this report of the auditor, but the court, Hall, P. J., overruled the exceptions and confirmed the report.   From this decree this appeal was taken.

*John ·Cessna, J. W. Lingenfelter* and *J. H. Jordan*, for appellant.   Concede that the intention was to prevent the collection of an existing indebtedness.   This is the only fraud alleged or charged at the time the deed was executed.   Josiah had no other debts, because by this transfer Andrew either paid or assumed all that he owed.   Hence, as Josiah had no other creditors, there could be no fraudulent intent.   The existing debt was paid in 1869, and with the payment of this debt the fraud as to this creditor was extinguished.   There is no evidence, and it is not alleged, that Josiah again became involved in debt till 1871, when he borrowed $600 from Dubbs.   It is not possible that this deed was made in 1864 to defraud a creditor whose debt was not created until 1877. " If a conveyance is not fraudulent when made it cannot be made fraudulent by any matter ex post facto:" Beck *v.* Parker, 15 P. F. Smith 263.   The deed was promptly entered of record, and this was legal notice to all parties; but it was proven as a fact, and the auditor so finds, that both Dubbs and Susanna Mowry had actual notice of the transfer before their debts were contracted.   The declarations made in 1871 could not infuse fraud into a transaction that occurred in 1864.   Dubbs's debt was not in existence and was not contemplated in 1864, and Susanna Mowry's debt was not contracted till 1877.   There can be no legal fraud except as to existing creditors at the time the conveyance is made or to subsequent creditors whom it is intended to defraud: Monroe *v.* Smith, 29 P. F. Smith 459; Byron's Appeal, 7 Casey 241; Snyder *v.* Christ, 3 Wright 499; Beck *v.* Parker, *supra;* Greenfield's Estate, 2 Harris 489. ·

This was not the proceeding in which to determine the question of title.   If the sale was made to defraud creditors, the proper manner to test the validity of the transaction is by a judicial sale at the suit of one or more of the creditors: Stewart *v.* Colder, 1 Jones 90.

"A party who sets up a title adverse to the proceedings by which money is brought into court for distribution, can not come in for a share:" Bush, Bunn & Co.'s Appeal, 15 P. F. Smith 363; Helfrick's Appeal, 3 Harris 382.

If Josiah's share is in court for distribution it came here by virtue of the deed made by him to Andrew and through the deed of assignment made by Andrew.   Josiah was no party to the assignment.   Unless his interest passed by his deed to Andrew it still

remains unsold, and would be liable for his debts.' If title passed by Josiah's deed then his interest must go to Andrew because there was no re-conveyance. Creditors cannot assail this deed on the ground of fraud, and at the same time participate in the distribution of a fund brought into court by reason of the deed.

*J. M. Reynolds* and *Russell & Longenecker*, for appellees.—The evidence in this case as to the fraudulent character of the transaction between Andrew and Josiah Mowry is most conclusive. That, standing by itself, may not be of much consequence, as the deed was made in 1864 and the money was loaned by the appellees to Josiah several years thereafter, but it is of great importance taken in consideration with the fact, which is also conclusively proved, that the loans were made upon the faith which the appellees placed in the declarations of Andrew Mowry that Josiah continued to own his interest in the property, Andrew believing that that interest did not pass to him by the fraudulent conveyance.

Mr. Justice STERRETT delivered the opinion of the court, May 24th 1880.

In March 1864 John R. Mowry died intestate, seised of the undivided moiety of real estate which he and his brother Andrew purchased and held as tenants in common. He left surviving him a widow and four sons. In August of the same year, Josiah, one of the sons, executed and delivered to his uncle, Andrew Mowry, a deed for all his right, title and interest in his father's real estate. Several years thereafter Andrew Mowry and the other three sons made deeds of general assignment, conveying the property in trust for creditors, &c., to Joseph Ickes, who subsequently sold the assigned estate; and, after paying the creditors, there remained a surplus to be divided among the assignors, or such persons as might be entitled thereto. It was conceded that Andrew Mowry was entitled to one-half and each of the three nephews to one-eighth of the surplus, and it was accordingly appropriated to them respectively. The present contention arose in regard to the remaining one-eighth, which was claimed, on the one hand, by Andrew, as purchaser of the interest formerly owned by Josiah, and, on the other, by the appellees, as creditors of Josiah, who alleged that their respective debts had been contracted solely on the faith of declarations made by Andrew to the effect that notwithstanding the conveyance to him, Josiah was still the rightful owner of the interest he originally had in his father's estate. The single question therefore was, whether Andrew or those creditors of Josiah were entitled to that portion of the surplus.

The auditor found that the conveyance from Josiah to his uncle was without consideration and for the purpose, on the part of both vendor and vendee, of defrauding the creditors of Josiah; that

Andrew subsequently declared to Samuel Dubbs and Susanna Mowry, the appellees to whom the fund was awarded, that Josiah still retained his interest in the property thus fraudulently conveyed, and that they loaned the money and became creditors of Josiah solely on the faith of the representations made by Andrew. These facts were fully established by the testimony.

The legal title to Josiah's interest in his father's estate appeared by the record to have been regularly conveyed to Andrew, who, by his deed of assignment, passed the same to his assignee. Under these circumstances, in the absence of actual or constructive notice that the conveyance from Josiah to Andrew was fraudulent, the purchaser from the assignee took a good title, unaffected by the fraud. The interest of Josiah being thus converted into money, the surplus of all the interests, after paying debts of the assignors, was prima facie payable to them according to their respective interests in the assigned estate; but the appellees, who had become creditors of Josiah on the faith of appellant's representations, interposed and asserted their right to that part of the fund in preference to him; and why were they not entitled to it? It is difficult to see upon what principle of equity he could be permitted to take the fund as against those who gave credit to Josiah on the faith of the representations that the interest he had in his father's estate still belonged to him. As between the parties to the fraudulent conveyance, neither law nor equity would lend its aid to either of them; and thus while the appellant might, as against Josiah, claim and hold the surplus, he stands in a very different relation to the appellees, who were induced solely by his representations to do that by which they will be greatly prejudiced if they are excluded from participation in the fund. In view of the facts found by the auditor, he is estopped from claiming the fund as against them. There would be no equity in permitting him to take it to their exclusion.

It is contended that inasmuch as the claims of the appellees arose after the assignment and are not debts against either of the assignors, they have no interest in the funds arising from sale of the assigned estate. This would be true if it were not for the important fact that they gave credit to their debtor solely on the faith of appellant's representations, and he is the only one who is resisting their claim to the fund. As general creditors of the assigned estate, without more, they would have no standing, but, upon the facts found by the auditor, their right to the fund in question is superior to that of the appellant.

Decree affirmed and appeal dismissed at the costs of the appellant.