# Thomas v. Butler.

*Evidence—Witness—Cross-examination—Credibility of witness—Husband and wife—Sheriff's interpleader.*

On a sheriff's interpleader to determine the ownership of property levied upon as the property of a husband, but claimed by his wife, the husband may be asked on cross-examination for the purpose of testing his credibility, whether he had not made certain declarations to third parties, naming them, at or about the time of the alleged transfer from himself to his wife concerning his indebtedness and the ownership of the property.

Where questions are forbidden to be put to the husband on cross-examination as to declarations made by him as to the ownership of the property, and it is not permitted to ask him as to the time, place and person involved in the alleged declarations, the testimony of a third person as to such declarations cannot be objected to, because proper ground was not laid for it.

*Sale—Fraudulent sale—Subsequent creditors.*

A transfer of personal property void as to existing creditors is not necessarily void as to subsequent creditors ; it is fraudulent only as to those it was intended to defraud.    Where there has been an actual, not a mere pretended, transfer by sale or gift from husband to wife, and there is no evidence from which an intent to defraud future creditors can be inferred, a subsequent creditor having notice of the transfer, cannot in general impeach it upon the ground that it was fraudulent and void as to existing creditors.

*Sale—Fraudulent sale—Husband and wife—Estoppel—Married woman.*

Where a husband transfers property to his wife and subsequently both husband and wife join in representations to a third party that the transfer was "no good," and was in effect a mere sham, and the husband obtains credit on such representations, the wife is estopped subsequently from claiming the property.

A married woman should be held to the observance of that good faith in her dealings with the world to which others are bound. Her protection is for the prevention of fraud; she should not thereby be enabled with impunity to defraud others.

Argued Oct. 26, 1900. Appeal, No. 160, Oct. T., 1900, by defendants, from judgment of C. P. Centre Co., Nov. T., 1897, No. 239, on verdict for plaintiff in case of Mary S. Thomas v. Thomas Butler and Burdine Butler. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Sheriff's interpleader to determine the ownership of personal property levied upon as the property of D. R. Thomas, and claimed by Mary S. Thomas, his wife.

At the trial when D. R. Thomas was on the stand, the following offer was made:

Counsel for the defendants proposed to prove by the witness on the stand declarations of his at or about the time of the alleged assignment of the personal property to his wife, which would tend to contradict the story of the same witness upon the stand, as to the indebtedness which he now alleges he owed his wife at that time; and for the purpose of contradicting the said witness, we propose to ask the witness on the stand whether he did not say, at or about the time of the assignment in suit, that outside of his liability in the Rishel matter and his indebtedness to McCalmont & Company, he had no indebtedness whatever, that he didn't owe a dollar, that the personal property was his, and was ample to protect the said McCalmont & Company for further credits, if the same were extended to him, D. R. Thomas.

Counsel for the plaintiff objects to the question proposed to be asked, for the reason that the defendant in this issue did not become interested in D. R. Thomas in any manner whatever until February 8, 1897, while the bill of sale and the evidence

already adduced show that the property was sold and transferred to the plaintiff in the issue on August 1, 1895.

The evidence is further objected to because it is irrelevant and immaterial in this issue in so much that it does not show that the execution creditor was induced to extend to the witness any credit whatever upon any declaration he may have made; so it is objected to because it is irrelevant and immaterial to the issue.

The Court: We understand that the declarations proposed to be proved were made to third parties in the absence of the plaintiff and we do not believe they are competent. We therefore sustain the objection, exclude the offer and seal a bill for the defendant. [1]

Burdine Butler was asked this question:

" Q. At the time that this drill was ordered, August 28, 1895, state what if any representations D. R. Thomas made to you as to the ownership of his personal property? A. He offered an apology for his indebtedness to McCalmont & Company and said that because of his lawsuit and money tied up with Rishel he was unable to pay his obligations, and he didn't owe a dollar to any one but Rishel, and it was on that statement that he was granted further credit. Q. What did he say as to the ownership of his personal property? A. That he owned it."

Mr. Reeder: " Q. Was Mrs. Thomas present? A. No, sir." Objected to.

Mr. Orvis : We proposed to show about the time declarations that he still owned that property, and that he owed no debts except a certain specified one.

Objected to as irrelevant and immaterial.

The Court: The objection is sustained and a bill sealed for the defendant. [2]

The court charged in part as follows :

[The plaintiff, Mary S. Thomas, claims this property by virtue of a transfer to her on August 1, 1895. As evidence of that claim, she shows here a bill of sale, setting forth most of the items. There were some items alleged to have been there at the time, that were not embraced in the bill of sale. They consist of some odds and ends which were presented to her by

her husband at the time for a balance over and above the consideration named in the bill of sale, which was $1,107.50, and the amount of the alleged indebtedness of her husband to her was $1,150.50.] [3]

[If a person loans money to another or becomes security for a debtor, knowing at the time he does so that the personal property of the person to whom he loans money or becomes security for, has been transferred bona fide, he is not in a position to take the property so transferred as the property of the person to whom he loaned the money, to pay the debt created thereby, as against such bona fide holder. You heard the testimony of Burdine Butler as to what occurred in relation to this bill of sale, that he took no account of it at the time the money was secured from his father.

The rule of law is then, in relation to subsequent creditors, that if you are satisfied it was a bona fide transaction, that there was a legal indebtedness existing at the time, and that this property was transferred bona fide in payment thereof, then a subsequent creditor cannot take it. You must be satisfied that it was not transferred with the intention to defraud such subsequent creditors. If it was made with the view of defrauding subsequent creditors, of course the verdict will have to be for the defendants ; but you will remember that this money was not loaned till nearly a year and a half after this transaction occurred.

In relation to the transfer of personal property, there is the same rule as in relation to the transfer of real estate. The Supreme Court has stated it in the case of Buckley v. Duff & Sons, 114 Pa. 596 ; and in Ditman v. Raule, 23 W. N. C. 302, this language is used : " A transfer of personal property void as to existing creditors, is not necessarily void as to subsequent creditors. It was fraudulent only as to those it was intended to defraud." That is, that, as to existing creditors, there may be a transfer of property which may be fraudulent as to them, but as against subsequent creditors it is good, unless the evidence satisfies the jury that it was made to defraud such subsequent creditors.] [4]

[There seems to be no evidence here to show that the price or value fixed upon the property transferred was necessarily under

its value; and if it was bona fide, then we say to you it would invest her with the title to that property.

If there is a dispute about any other items that were embraced in the bill of sale, you must determine whether or not she purchased them afterwards, or to what extent she purchased them afterwards.

You remember the testimony as to the organ; and we say to you that, so far as the wagons were concerned, and any other little pieces of property that were conveyed at the same time on this indebtedness over and above the amount named in the bill of sale, it also invested her with title to them. You find the transaction bona fide.] [5]

If you believe that there was a bona fide indebtedness existing—and there is no evidence that materially contradicts the facts as testified to by Mr. and Mrs. Thomas and Jonas Stine—it would invest this plaintiff with the title to the property, so that any subsequent creditor could not levy upon it and take it for her husband's debts.] [6]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1, 2) rulings on evidence, quoting the bill of exceptions. (3–6) Portions of charge as above, quoting them.

*Calvin M. Bower*, with him *Newton B. Spangler* and *Ellis L. Orvis*, for appellants.—The facts and circumstances connected with the transfer from the husband to the wife, as brought out by the cross-examination alone, furnished an adequate foundation for the admission of the declarations of Mr. Thomas: Gibbs v. Neely, 7 Watts, 305; Bredin v. Bredin, 3 Pa. 81; Rogers v. Hall, 4 Watts, 359; Price v. Junkin, 4 Watts, 85; Confer v. McNeal, 74 Pa. 112.

If there be even very slight evidence of complicity between grantor and grantee to defraud creditors, the declarations of one, although after the grant, are admissible against the other: Pier v. Duff, 63 Pa. 59; Deakers v. Temple, 41 Pa. 234.

When testimony has been given tending to establish a combination to defraud creditors, the declarations of either party, though not made in the presence of the other, are proper evi-

dence for the jury as affecting both: Gibbs v. Neely, 7 Watts, 307; Deakers v. Temple, 41 Pa. 234; Lowe v. Dalrymple, 117 Pa. 568; Rogers v. Hall, 4 Watts, 359; Confer v. McNeal, 74 Pa. 112; Pier v. Duff, 63 Pa. 59.

*Wilbur F. Reeder* and *W. E. Gray*, with them *Henry C. Quigley*, for appellee.

OPINION BY RICE, P. J., February 14, 1901:

This was a sheriff's interpleader issue between Mary Thomas and an execution creditor of her husband. Her allegation was that she obtained title to a considerable portion of the property levied upon from her husband, he having transferred the same to her in discharge of a bona fide indebtedness due from him to her. He was called as the first witness in her behalf, and testified fully and in detail as to the transfer of the title to her and as to the consideration therefor. Upon cross-examination it was proposed to ask him whether he had not made certain declarations to third parties, naming them, at or about the time of the alleged transfer, concerning his indebtedness and the ownership of this property. An affirmative answer to these questions would have tended to contradict the testimony he had given in chief, and a negative answer would have opened the door to contradiction by the testimony of other witnesses. Grant that his wife's title to the goods could not be impeached by his subsequent declarations in her absence, it was clearly competent to impeach, in any legitimate mode, the credibility of the witness by whose testimony she sought to prove her title. One of the most common modes of impeaching the credit of a witness is by the introduction of proof that he has made statements out of court, as to matters relevant to the issue, contrary to what he has testified at the trial. We are of opinion, therefore, that there was error in overruling the .offer embraced in the first assignment of error.

Before the credit of a witness, not being a party to the issue, may be impeached in this mode, it is generally held necessary, in the case of verbal statements, first to ask him as to the time, place, and person involved in the contradiction: 1 Greenl. on Ev. (15th ed.) sec. 462. But the offer embraced in the second assignment was not objected to on that ground, and could not

have been, because, as we have shown in the discussion of the first assignment, the defendants attempted, but were not permitted, to comply strictly with the rule. Such being the case, we think there was error in rejecting the offer. The ruling in Miller v. Baker, 160 Pa. 172, at p. 179, is directly in point and renders further discussion of the assignment unnecessary.

The judgment upon which the execution issued was entered on a note with confession of judgment given by the husband of Mary Thomas, the plaintiff in this issue, to Thomas Butler for borrowed money. It was given a year and a half after the date of the bill of sale of the goods in question from D. R. Thomas to his wife, and Butler knew of the bill of sale at the time he made the loan. This being so, the court was warranted in calling the jury's attention to the legal principle that a transfer of personal property void as to existing creditors is not necessarily void as to subsequent creditors; it is fraudulent only as to those it was intended to defraud. Where there has been an actual, not a mere pretended, transfer by sale or gift from husband to wife, and there is no evidence from which an intent to defraud future creditors can be inferred, a subsequent creditor, having notice of the transfer, cannot, in general, impeach it upon the ground that it was fraudulent and void as to existing creditors. But in the present case the defendants, one of whom was the surety of D. R. Thomas on the note, introduced evidence to the effect that in the negotiations for the loan Thomas and his wife represented that the bill of sale was concocted for the purpose merely of defrauding certain creditors, and, to use their language as recited by the witness, " was no good." Whether or not they made these representations, and whether or not they meant that, notwithstanding the sham bill of sale, the whole beneficial ownership of the goods was still in the husband, and whether or not Thomas Butler made the loan, and Burdine Butler became surety, upon the faith of them, were questions of fact for the jury. But if the jury decided all these questions in the affirmative, it would be inequitable, to say the least, for the plaintiff to set up the bill of sale as against these defendants. Similar representations as to the ownership of real estate were held to estop the fraudulent grantee from asserting his title against a creditor of the grantor who had been induced

thereby to part with his money: Mowry's Appeal, 94 Pa. 376. It is true Burdine Butler testified that he did not consider the bill of sale, which was left with him, as any additional security. Of course he would not. The point made by the defendants is, not that they relied on the deposit of the bill of sale as collateral security, but that they relied on the representations that it was " no good," in effect, a mere sham. The distinction between this case and Paul v. Kunz, 188 Pa. 504, is manifest. There it was sought to estop a married woman by her silence as to declarations made by her husband in her presence. Here the positive declarations of the married woman herself are shown.

The general rule (if it may now be said to be the rule and not the exception) that the doctrine of estoppel does not apply to married women, " rests upon the fact that a married woman cannot contract. It follows logically that what she cannot pass by contract she may not pass by estoppel. But where the law clothes her with the power to contract, to the extent of that power she is bound precisely as other persons are bound. The law gives her the right to dispose of her personal estate with the assent of her husband. In doing so she has no more right to injure and mislead others than if she were sui juris : " Powell's Appeal, 98 Pa. 403 (1881). " A married woman should be held to the observance of that good faith in her dealings with the world to which others are bound ; her protection is for the prevention of fraud ; she should not thereby be enabled with impunity to defraud others : " Grim's Appeal, 105 Pa. 375 (1884). Indeed, in the very case relied on by the appellee's counsel, Paul v. Kunz, supra, the court said that it might be conceded, " that if her own claim of indebtedness against her husband had been directly in question, and she had denied any such indebtedness, she would have been bound by her denial." Granting, even, that the evidence was not sufficient to warrant the submission of the question of estoppel to the jury, or, if sufficient, that the omission to submit the question to them in the absence of special request is not assignable for error, we think the learned judge fell into error in overlooking this evidence when he made the comment which is the subject of the sixth assignment. If Burdine Butler was to be believed, the testimony of the plaintiff and her husband was very materially con-

tradicted by their own statements out of court, made at a time when they were under the highest obligation to speak the truth.

We need not further discuss the assignments in detail. We have sufficiently indicated the reasons which constrain us to send the case back for a retrial.

The judgment is reversed and the venire facias de novo awarded.